IRVING W. COLBURN *v.* ROBERT L. FROST.

October Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed November 7, 1939.

*Stanley L. Burns* and *Lindley S. Squires* for the plaintiff.

*Thomas F. Mangan* and *James E. Bigelow* for the defendant.

JEFFORDS, J.   At about seven thirty on the evening of November 3, 1938, the plaintiff and his wife were walking easterly on the north side of West Street, one of the principal business thoroughfares of the City of Rutland.   The plaintiff was wearing a light colored overcoat.   When about in the middle of the block made by the intersection of Cottage Street to the west and Wales to the east they decided to cross the street in order

to reach the church to which they were going, which is located on the south side of West Street and easterly of Wales Street. At the time there were cars parked on the north side of West Street but none on the south side.

They stepped off from the curb and went out to the rear of one of the parked cars where a clear view of the street to the east and the west could be had. They waited there until some cars coming from the east had passed. The plaintiff then looked to the east and saw that there were no cars approaching from that direction. He then looked to the west and saw the lights of defendant's car. After some talk between them they started diagonally across the street, the plaintiff walking to the right of his wife. The street at this point was from 30 to 36 feet wide and the place of crossing was not at a designated cross walk. The course that they took was one a little diagonally to the east. The plaintiff testified that they hustled across the street. Although he was 82 years old it is apparent that the plaintiff was rather spry on his feet as he was engaged in the business of giving boxing lessons up to the time of the accident. After starting to cross, neither the plaintiff nor his wife looked to the east or west. When they were within 6 or 7 feet of the south curb the plaintiff was struck by defendant's car and received personal injuries and brought this action in tort to recover compensation for the same.

No horn was blown nor any warning signal given as the defendant testified that he did not see plaintiff until the time of impact. The plaintiff was struck by the left front fender of the car and when the car was stopped he was lying opposite the left front wheel. No evidence was introduced as to the rate of speed of the car as it approached the scene of the accident, nor as to what distance, if any, the plaintiff was dragged by the car before it was brought to a stop.

The mental processes of the plaintiff are shown by the following evidence, all introduced without objection. When the two were standing at the rear of the parked car and after having looked to the east and the west the plaintiff testified that he said to his wife: "We got plenty of time; she said 'there is a light', I said 'yes'; as near as we could locate it it was about the Outlet store or possibly the picture house; of course I couldn't tell, but we supposed we had ample time to cross."

He also testified to the effect that in crossing when he did he "thought I was using precaution"; that when he started to cross the street he "thought it was safe or I would never have started." In answer to a question on cross examination: "And you didn't look again?" he replied, "No, sir; I thought it was safe."

The court questioned him as follows:

"Court—Did you look again to see where that automobile went?

A. No, sir, we went, hustled across as good as I, as good as I usually do, always cross pretty fairly quick you know.

Court—That is you didn't pay any more attention to that automobile that was coming?

A. No, sir, because I felt safe, we went right along, felt safe, I knew they could see us.

Court—You thought they could see you, if they got too close they would stop?

A. Why yes."

Mrs. Colburn testified as follows:

"Q. Yes, now as you stepped off from the curb to cross the road you say that you looked for some cars?

A. Yes, we did.

Q. And just describe what you noticed at that time.

A. I know that there was this car coming way up the street by the Outlet store, and we had, we considered we had plenty of time to cross, and we did, we think we did have plenty of time, it was so far away; there was no whistle, no horn blown."

The foregoing summary is based on evidence which was undisputed. The only variance as to any material fact relates to the distance of the car from the plaintiff when he started to cross the street. The plaintiff testified that it was beyond Cottage Street and near the Outlet store or the theatre. No evidence was introduced as to the distance of either of these build-

ings from Cottage Street. He also testified that he though it was from 200 to 250 feet away but said that this was only a rough guess. The defendant testified in effect that the accident happened about in the middle of the block, and from the point of collision to Wales Street he should say was three or four hundred feet.

At the close of plaintiff's case the defendant moved for a directed verdict on the grounds, in substance, (1) that the evidence did not show any actionable negligence on the part of the defendant and, (2) that the evidence showed contributory negligence on the part of the plaintiff. This motion was granted and the case comes here on exceptions of the plaintiff.

Although not so stated, it is apparent from the transcript that the motion was granted on the second ground only, and it seems that it must have been for the evidence tended to show that the defendant was negligent if not reckless in one or more respects alleged by the plaintiff in his complaint. So we give no further consideration to the first ground and pass to the second.

■■ The burden was upon the plaintiff to show his freedom from contributory negligence, *Farrell* v. *Greene,* 110 Vt. 87, 2 Atl. 2d. 194, but in considering this motion the evidence must be taken in the light most favorable to the plaintiff. *Farrell* v. *Greene, supra.*

■ Since there was no regular cross walk at the point where the accident happened the plaintiff attempting to cross there was required to exercise greater vigilance than if he had crossed at an established crossing. *Eagan* v. *Douglas,* 107 Vt. 10, 15, 175 Atl. 222; *Howley* v. *Kantor,* 105 Vt. 128, 131, 163 Atl. 628.

■■ But we have held in cases where the accidents happened at places other than cross walks that the law does not say how often a pedestrian about to cross a street must look or precisely how far or when or from where. He is simply required to exercise for his own safety the measure of care that a prudent man would exercise in the same circumstances. But as circumstances vary so do the practical requirements of the rule vary. The circumstances and dangers are always to be taken into account in determining what is due care or the evidence of it. *Duchaine* v. *Ray,* 110 Vt. 313, 319, 6 Atl. 2d. 28; *Eagan* v. *Douglas, supra; Aiken* v. *Metcalf,* 90 Vt. 196, 199, 97

Atl. 669. In our cities and villages, due care requires a pedestrian in all cases to look for traffic before starting to cross a main traveled street between intersections, or to look at such time and place as will reasonably be of some benefit in protecting him and giving him knowledge of the condition of traffic. *Duchaine* v. *Ray, supra; Eagan* v. *Douglas, supra.*

The plaintiff was not obliged to use constant vigilance and he had the right to assume that the defendant would exercise the care which the law required of him and that he would be given some warning before he was run down. *Porter* v. *Fleming,* 104 Vt. 76, 80, 156 Atl. 903; *Dervin* v. *Frenier,* 91 Vt. 398, 401, 100 Atl. 760; *Aiken* v. *Metcalf, supra.* His care and diligence is to be measured in view of this assumption. *Porter* v. *Fleming, supra; Crossman* v. *Perkins,* 101 Vt. 94, 98, 141 Atl. 594. Although entitled to the benefit of this assumption, the plaintiff could not for that reason omit any care which the law required of him, as the rule applies only in favor of one whose own conduct measures up to the standard of due care. *Duchaine* v. *Ray, supra; Farrell* v. *Greene, supra; Eagan* v. *Douglas, supra.*

The question is then, whether it can be said, as a matter of law, that the plaintiff in crossing as he did omitted any care which the law required of him. Was he, as a matter of law, required to wait until defendant's car had passed or look towards it again while crossing the street or take other measures for his safety? We think not.

Taking the evidence in the light most favorable to the plaintiff, the defendant's car was beyond Cottage Street when he started to cross. The accident happened at about the middle of the block. According to the defendant it was about four hundred feet from the point of impact to Wales Street and consequently it was about the same distance to Cottage. There was no other traffic in the block and the street was wide. He crossed at a brisk pace. He had on a light overcoat, so should have been plainly visible to the defendant. The conversation and other evidence heretofore recited shows that he considered the situation before starting. He had to traverse something under 25 feet while the defendant was travelling over 400 feet and through an intersection and on a main thoroughfare where cars should reasonably be expected to run at a moderate rate of speed. Finally, he had the benefit of the assumption heretofore

referred to. In view of all the facts and circumstances we hold that it was a question for the jury as to whether the plaintiff was guilty of contributory negligence in starting to cross and in crossing as the evidence discloses he did.

As is usual in such cases, it is easy enough to look back at this accident and see how a little more watchfulness on the plaintiff's part would have saved him. But this is not conclusive against him. He is to be judged by the situation as it appeared or ought to have appeared to him at the time. The mere fact of the collision is not necessarily inconsistent with the theory of due care on his part. *Aiken* v. *Metcalf, supra,* at page 201. As was said by the late Justice Cardozo in *Knapp* v. *Barrett,* 216 N. Y. 226, 110 N. E. 428, 429: "If he (plaintiff) has used his eyes, and has miscalculated the danger, he may still be free from fault."

What we have said is not to be taken as implying that there might not be cases where the evidence disclosed great speed known to the plaintiff or such close proximity of the approaching car, or other circumstances, as to warrant a holding of contributory negligence as a matter of law on the part of a pedestrian starting to cross or crossing in the manner here shown.

None of our cases have been brought to our attention nor have we found any in our reports having facts similar to the ones here. We have had those where the pedestrian was not aware of the approaching car until too late to avoid being struck, such as *Aiken* v. *Metcalf; Dervin* v. *Frenier; Howley* v. *Kantor; Eagan* v. *Douglas* and *Duchaine* v. *Ray,* all *supra.* We have also had to do with a situation where the plaintiff seeing the approaching car at all times walked deliberately into its path. *Farrell* v. *Greene, supra.* Probably the case nearest in point is that of *Porter* v. *Fleming, supra.* There the facts were different but the principle involved is similar to the one here.

In the great majority of other jurisdictions the courts have held in situations like the one here that the question of contributory negligence was one for the jury. For illustrative cases see: *Boston Elevated Ry.* v. *Greaney,* 68 Fed. 2d. 657; *Thorton* v. *Cater,* 94 N. J. L. 435, 111 Atl. 158; *Dugan* v. *Public Service Transportation Co.,* 5 N. J. Misc. 245, 136 Atl. 195; *Poling* v. *Melee,* 115 N. J. L. 191, 178 Atl. 737; *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486; *Harker* v. *Gruhl,* 62 Ind. 177.

111 N. E. 452, 458; *Porcella* v. *Finnan*, 113 Conn. 730, 156 Atl. 863; *McCarthy* v. *Souther*, 83 N. H. 29, 137 Atl. 445; *Newman* v. *Hill*, 250 Mass. 578, 146 N. E. 46; *Ritter* v. *Hicks*, 102 W. Va. 541, 135 S. E. 601, 50 A. L. R. 1505; Blashfield, (Permanent Edition) Vol. 2, § 1394.

*Judgment reversed and cause remaned.*