MYRTIE M. HILL *v.* WILLIAM A. STRINGER

(75 A2d 657)

May Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 3, 1950.

*Fayette & Deschenes* for the plaintiff.

*Leon D. Latham, Jr., William C. Hill* and *Robert M. Rosenberg* for the defendent.

SHERBURNE, C. J.  The plaintiff was struck by the defendant's automobile while she was walking northerly across Main street, in the city of Burlington, at a point about 29 feet west of the westerly cross-walk on Church street, at some time after 8:30 in the evening of September 1, 1947.  The defendant made no claim below, and

makes none here, that his negligence did not proximately cause the accident. The only question before us is whether there was sufficient evidence for a jury to find that the plaintiff was free from contributory negligence, and is raised by the plaintiff's exception to the granting of the defendant's motion for a directed verdict at the close of the plaintiff's evidence.

Main street at the place of the accident is 55 feet wide from curb to curb, and is a busy thoroughfare. The plaintiff was 65 years old and because of past illness had walked slowly for some time, and was somewhat bothered by streetlights at night. At the time of the accident it was dark and the streetlights were on. The defendant was driving a car with brakes that would not hold westerly on Main street, and was heading for a garage to get them checked. As he drove through the Church street intersection there was a car on that street coming toward him on his right, and he glanced over to check its location. When he looked back the plaintiff's face was in his windshield and she was going under the car.

There were no eyewitnesses to the accident other than the plaintiff and defendant. Her evidence was given by deposition, and showed that she had walked up town from her home easterly on the southerly side of Main street to a point near the Alps Cafe, where she started to cross to the north side of the street. When about to cross she looked first to her left and then to the right to see if any cars were coming in either direction, and saw none. Just before reaching the middle of the street she looked again to the right and saw the defendant's car about 40 feet away approaching at a speed of 30 miles per hour as it seemed to her. Her testimony as to what she did then is somewhat conflicting. In her direct examination she testified that she was hit before she reached the middle of the street, and that after she saw the car she thought she would be able to make it, and took a few steps before she was hit. In cross-examination she was asked if she kept on walking or stopped when she saw the car, and she answered that she stopped, and when asked if she took two or three steps forward, answered that she might have taken a couple steps. She was asked if she didn't realize there might be an accident when she saw this car approaching, and answered: "I didn't know what to think, it came so quick that I couldn't tell what was coming at all, it didn't give me a chance to." She didn't know what part of the car hit her, and testified that it carried her some distance, but that none of the wheels ran over her, and that the car

stopped soon and didn't go far. According to the defendant's testimony he was traveling at not over 15 miles per hour and was able to stop his car with the emergency brake in from 25 to 35 feet after the impact, and at the place he stopped the plaintiff's body was 25 to 35 feet behind the left rear end of his car. He testified that there was no car ahead of him, and that after the accident he pulled his car to the side to get out of the way. A police officer, called as a witness by the plaintiff, testified to making some measurements after the accident. He testified that he found defendant's car 49 feet and 4 inches west of the cross-walk, and that from the position of the plaintiff's body and blood on the pavement he established the point where she was hit at about 29 feet and 4 inches west of the cross-walk, and 30 feet north from the southerly curb line of the street and 25 feet south of the north curb.

The burden was upon the plaintiff to show her freedom from contributory negligence. *Farrell* v. *Greene,* 110 Vt 87, 90, 2 A2d 194; *Colburn* v. *Frost,* 111 Vt 17, 21, 9 A2d 104. In passing upon the motion for a directed verdict the evidence must be taken in the light most favorable to the plaintiff. The effect of modifying evidence is to be excluded. Contradictions and contradictory inferences are for the jury to resolve. The tendency of the evidence and not its weight is to be considered. *Tinney* v. *Crosby,* 112 Vt 95, 101, 22 A2d 145, and cases cited.

A jury acting reasonably could have disregarded the evidence of the defendant and the police officer as to the location of the plaintiff's body and the blood on the pavement, or could have concluded that her body might have been carried or thrown there by the defendant's car, and could have found that the plaintiff both saw the defendant's car and was hit before she reached the center of the street, and that after she saw the car she stopped and took no further steps forward.

Since the plaintiff was attempting to cross the street at a place some distance west of the regular cross-walk she was required to exercise greater vigilance and watchfulness than if she had taken the cross-walk. *Colburn* v. *Frost, supra; Duchaine* v. *Ray,* 110 Vt 313, 318, 6 A2d 28; *Eagan* v. *Douglas,* 107 Vt 10, 15, 175 A 222; *Howley* v. *Kantor,* 105 Vt 128, 131, 163 A 628. But in crossing a city street at a place other than a regular cross-walk the law does not say how often a pedestrian must look or precisely how far or when or from where. He is simply required to exercise for his

own safety the measure of care that the prudent man would exercise in the same circumstances. But as circumstances vary so do the practical requirements of the rule vary. The circumstances and dangers are always to be taken into account in determining what is due care or the evidence of it. *Colburn* v. *Frost, supra; Duchaine* v. *Ray, supra; Eagan* v. *Douglas, supra; Aiken* v. *Metcalf,* 90 Vt 196, 199, 97 A 669. In our cities and villages due care requires a pedestrian in all cases to look for traffic before starting to cross a main traveled street between intersections, or to look at such time and place as will reasonably be of some benefit in protecting him and giving him knowledge of the condition of the traffic. *Colburn* v. *Frost, supra,* at p. 22, 9 A2d 104; *Duchaine* v. *Ray, supra,* at p. 319, 6 A2d 28; *Eagan* v. *Douglas, supra.*

On a busy city street or much traveled road vehicles customarily travel to the right of the center of the highway so as to more easily pass vehicles coming in the opposite direction without interference, in compliance with V. S. 47, § 10,219 (I). In reliance upon this custom a prudent pedestrian, when crossing such a street from south to north, would at the outset give his chief attention to traffic approaching from the west and his left, until such time as he reached the vicinity of the center of the street, when he would give his chief attention to traffic approaching from the east and his right, and relax somewhat his watchfulness for traffic approaching from his left. This has been recognized to some extent in *Duchaine* v. *Ray, supra; Howley* v. *Kantor, supra,* at p. 130, 163 A 628; *Parker, Admr.* v. *Smith,* 100 Vt 130, 132, 135 A 495; *MacDonald* v. *Orton,* 99 Vt 425, 429, 134 A 599; *Aiken* v. *Metcalf, supra,* at p. 200, 97 A 669.

The plaintiff was not obliged to use constant vigilance, and she had the right to assume that the defendant would exercise the care which the law required of him, and that she would be given some warning before she was run down. *Colburn* v. *Frost, supra; Porter* v. *Fleming,* 104 Vt 76, 80, 156 A 903; *Dervin* v. *Frenier,* 91 Vt 398, 401, 100 A 760; *Aiken* v. *Metcalf, supra.* Her care and diligence are to be measured in view of this assumption. *Colburn* v. *Frost, supra; Porter* v. *Fleming, supra; Crossman* v. *Perkins,* 101 Vt 94, 98, 141 A 594. But she could not for that reason omit any care which the law required of her, as the rule applies only in favor of one whose own conduct measures up to the standard of care. *Colburn* v. *Frost, supra; Duchaine* v. *Ray, supra; Farrell* v. *Greene, supra; Eagan* v. *Douglas, supra.*

.The defendant says that it is incredible that the plaintiff could not have seen the lights of the defendant's approaching car when she stepped off the curbing on the south side of Main street. Her slow walk probably did not exceed 2½ miles per hour. Assuming that the defendant was only traveling 15 miles per hour, during the time that she took to travel 27 feet, or not quite to the center of the street, he traveled 6 times as far, or 162 feet. Add to this the distance the car was away when she first saw it and the car must have been about 200 feet away when she stepped off the curb. If we take her estimate of his speed at 30 miles per hour, his car was about 360 feet away. In view of the traffic there may have been on Church street through the intersection it may be that her view was cut off, but assuming that the defendant's car was the shorter distance away and that she should have seen its lights when she stepped off the curb, we cannot say as a matter of law that she should have waited until the car passed before she started across the street, or that she was required to look again to the east before she did, or that after she saw the car she failed to exercise the care of a prudent person. These were all facts for the jury to decide.

We hold that there was sufficient evidence for a jury to find that the plaintiff was free from contributory negligence, and that it was error to grant defendant's motion for a directed verdict.

*Judgment reversed, and cause remanded.*