### RICHARD T. FRENIER *v.* NELLIE H. BROWN

(80 A2d 524)

February Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed May 1, 1951.

*Bloomer & Bloomer* for the plaintiff.

540

*Ryan, Smith & Carbine* for the defendant.

ADAMS, J. This is an action of tort to recover damages to person and property by reason of a collision between an automobile owned and operated by the plaintiff and one operated by the defendant. The accident occurred on Columbian Avenue in the City of Rutland on January 27th, 1950. Trial was by jury. At the close of the plaintiff's evidence, the defendant moved for a directed verdict. The motion was granted and the case is here on the plaintiff's exception thereto.

The only ground of the motion as disclosed by the record is that the plaintiff was guilty of contributory negligence as a matter of law. That question is before us and is raised by the plaintiff's exception to the granting of the defendant's motion.

■ The burden was on the plaintiff to show freedom from contributory negligence but direct or affirmative proof to the point is not required. *Palmer* v. *Marceille,* 106 Vt 500, 507, 175 A 31; *Appleyard Motor Transp. Co.* v. *Ray Co.,* 115 Vt 519, 522, 66 A2d 10.

■ In passing upon the motion for a directed verdict the evidence must be taken in the light most favorable to the plaintiff. The effect of modifying evidence is to be excluded. Contradictions and modifying evidence are for the jury to resolve. The tendency of the evidence and not its weight is to be considered. *Tinney* v. *Crosby,* 112 Vt 95, 101, 22 A2d 145; *Hill* v. *Stringer,* 116 Vt 296, 299, 75 A2d 657.

With these principles in mind, the jury could have found the following facts: Columbian Avenue runs generally east and west and is U. S. route 4 through Rutland to West Rutland and beyond. The plaintiff was driving his automobile from West Rutland to Rutland. The defendant was the operator of an automobile traveling in the opposite direction. It was about five thirty P.M. and both cars had their lights on. The avenue has a cement surface twenty-four feet wide. The plaintiff entered a sharp left hand curve at a speed of between thirty and thirty-five miles per hour. He was proceeding on his right hand side of the road and near the outside edge of the cement. At that time he saw the auto operated by the defendant approaching at a speed of about thirty miles per hour. It was on the outside of the curve and on the plaintiff's side of the road. The plaintiff turned to his left to give the defendant's car room to go by on his right. The defendant turned to her right.

The cars collided with their front ends northerly of the center of the cement and stopped with both at an angle to the road; the plaintiff's headed somewhat easterly and the defendant's headed somewhat westerly. They stopped imediately when they collided. There were no skid marks from either car. The left rear corner of the defendant's car was 8 feet 4 inches and its left front corner was 12 feet 9 inches from the southerly edge of the cement. The right rear corner of the plaintiff's car was 11 feet 2-½ inches and its right front corner was 15 feet 6 inches from the southerly edge of the cement.

A railroad with two main tracks runs parallel to the avenue on its southerly side and is 3 to 4 feet below the level of the cement. Near the westerly end of the curve a street turns off the southerly side of the avenue with a railroad crossing on that side street known as Temple crossing. There is a warehouse on the southerly side of the avenue easterly of the place where the accident happened. Its westerly corner is 4 feet from the southerly edge of the cement and about ten feet from that corner there are steps leading into the building. These consist of two steps leading down from the level of the road into the building. It was 24 feet 7-½ inches from that corner of the warehouse to the left rear corner of the defendant's car and 36 feet 4 inches to the right rear corner of the plaintiff's car. There is a side track 4 feet southerly of the warehouse and between that and the main line tracks. It extends westerly of the warehouse about fifty feet and during that distance swings towards the avenue. There is a gravel shoulder on the southerly side of the cement which is 18 inches to 2 feet wide opposite where the collision occurred and about 2 feet wide further west. There is a drop of about 5 feet from the shoulder at the west end of the warehouse and then the ground levels off to the railroad tracks. From that drop the ground slopes up until it is even with the road near the Temple crossing. The gravel shoulder rounds down along that slope and the slope gets steeper going easterly from Temple crossing until it ends at the 5 foot drop at the west end of the warehouse.

The plaintiff had traveled this road many times and was familiar with the curve, location of the warehouse, railroad tracks, gravel shoulder and the general surroundings. The cars were each fifty to sixty feet from the place of collision when the plaintiff saw the defendant's car approaching on the plaintiff's side of the road.

The plaintiff testified that "I figured it was best for me to turn

to my left to give this car room to go by me." Also when asked if there wasn't an area on his right to which he could have pulled to avoid the accident he replied, "Not without going on the railroad tracks."

The accident was investigated by two police officers who were called to the scene. They made the measurements specifically set forth herein as to the location of the cars after the accident. There was admitted an exhibit made by one of them after their investigation showing the position of the cars, Columbian Avenue and various other objects with the measurements above set forth and others.

The defendant introduced in connection with the testimony of the plaintiff and his witnesses several small pictures of the general location. She says in her brief in support of the claim of contributory negligence by the plaintiff that these show the gravel shoulder wider than set forth above and that there was ample room on the south side of the road for the plaintiff to pass the defendant without an accident occurring and that the physical facts as shown by her exhibits must prevail over the testimony of a witness inconsistent therewith. The trouble with her position is that in addition to the positive testimony as to the width of the gravel shoulder, her pictures and the inferences to be drawn therefrom were not without contradiction and they were somewhat discredited. A disinterested witness who was working in a filling station just easterly of the warehouse and who had worked there for more than a year and was very familiar with the entire location testified for the plaintiff. He heard the crash and went to the scene immediately. He testified about the gravel shoulder, its width, the slope southerly of it, the side track and other things. When shown the pictures on cross examination he still insisted on the width of the gravel shoulder as being what he had testified to and specifically said that one of the pictures was deceptive. It also must be noted that the accident happened in January and an examination of the pictures shows that they were taken when the foliage was on the trees so they must have been taken not earlier than the next spring; when did not appear. There was also testimony that there was snow on the shoulder at the time of the accident. There was none at the time the pictures were taken.

She also says in this connection that there was ample room on the south side of the road to allow the plaintiff to pass the defendant and without leaving the traveled portion of the road. She calls

our attention to the sketch made by the police officer that shows there was 8 feet 4 inches from the defendant's car to the southerly edge of the cement. But this was after the defendant's car had stopped and does not show its position when the plaintiff first saw it fifty feet from that point or show its course while it traveled that fifty feet. Its position after the collision, particularly its angle to the highway plus the plaintiff's testimony that when he first saw the car it was on his side of the road, would justify the inference that, without doubt, it was nearer the southerly side of the road while it was traveling that fifty feet than it was at the time of the collision.

One driving an automobile along a public highway who sees a car approaching on the wrong side of the road has, at the outset, a right to assume that the driver will observe the law of the road and seasonably move over to his right so as to pass without interference. He may proceed on this assumption until he sees or in the exercise of reasonable care ought to see that it is unwarranted. His care and diligence are to be measured in view of this assumption. But he cannot for that reason omit any care the law requires of him. *Hatch* v. *Daniels,* 96 Vt 89, 93, 117 A 105; *Steele* v. *Fuller,* 104 Vt 303, 308, 158 A 666; *Page* v. *McGovern,* 110 Vt 166, 171, 3 A2d 543; *Ranney's Admr.* v. *St. Johnsbury Trucking Co.,* 116 Vt 13, 16, 68 A2d 697; *Hill* v. *Stringer,* 116 Vt 296, 300, 75 A2d 657.

The plaintiff says that he was confronted with an emergency and his conduct as to contributory negligence is to be tested by what is called the "emergency rule." In *Hatch* v. *Daniels, supra,* at 94-95, a case involving an automobile accident, this Court stated the rule as follows, omitting citations: "When one is confronted with a sudden peril, as the plaintiff was, he is not held to the exercise of the same degree of care as when he has time for reflection. The law recognizes the fact that a prudent man, so brought face to face with an unexpected danger, may fail to use the best judgment; may omit some precaution he could have taken; may not choose the best available method of meeting the dangers of the situation. When one, without his own fault but through the negligence of another, is so situated, he is not ordinarily, if ever, chargeable, as a matter of law, with contributory negligence, if, in attempting to escape the danger, he makes a mistake in the method adopted." See also *Bennett* v. *Robertson,* 107 Vt 202, 214-215, 177 A 625, 98 ALR 152; *French* v. *Nelson,* 111 Vt 386, 391, 17 A2d 323.

It is not necessary to repeat what the evidence disclosed. At the speed the cars were approaching each other, which was not excessive, and when the plaintiff saw the defendant's car on the plaintiff's side of the road he had only about a second "to look out for himself, and to exercise the care of a prudent man, not only to avoid injuring others, but also to protect himself from injury." *Hatch* v. *Daniels, supra,* 96 Vt at 94. He chose to turn to the left in an attempt to avoid the other car and allow it to use the plaintiff's side of the road where it then was. The defendant claims that the plaintiff cannot invoke the rule as the emergency was created by the plaintiff's own fault in turning to the left and if he had continued straight along there would have been no accident. It is unfortunate that both the plaintiff and defendant decided at about the same instant to head for the same place; the plaintiff as a place of safety and the defendant as the place where she should have been in the first place. It is a fair inference that neither of them slackened speed for the defendant was attempting to get back on to her own side of the road and the plaintiff, seeing the defendant coming toward him one hundred feet away, was attempting to get out of her way. It is easier to look back and see how an accident could have been avoided, much easier than to look ahead, use judgment and decide what should be done to avoid it and then do it, especially where there is only about one second for the whole process. The jury could have found that the emergency was created solely by the negligence of the defendant in driving upon the wrong side of the road on the curve and that it was not created by the plaintiff when he turned to the left in an attempt to avoid the defendant.

██ One who is put in a perilous position by the negligence of another cannot be regarded as guilty of contributory negligence if he takes such steps to protect himself as a reasonably prudent person might take, even though he might have avoided the injury by the use of better judgment and by taking another course than the one he adopted. *Dole* v. *Lublin,* 112 Conn 603, 153 A 856. The law appreciates that one who is confronted with a sudden peril, through no fault of his own, may do some things which, after it is all over, may seem to have been improper or even foolish. It gives him a reasonable opportunity to recover from the shock naturally resulting from such a situation and affords him a reasonable opportunity to regain control of himself and his car, before he can be charged with contributory negligence. *Beatty* v. *Dunn et al,* 103

Vt 340, 343, 154 A 770; *Bennett* v. *Robertson,* 107 Vt 202, 215, 177 A 625, 98 ALR 152. The question is, what would or might a prudent man, in the same circumstances, do and this question is for the jury. *Hatch* v. *Daniels, supra,* at 95 and cases cited. *Benedict* v. *Union Agricultural Society,* 74 Vt 91, 100, 52 A 110; *Lee* v. *Donnelly,* 95 Vt 121, 127, 113 A 542; *Porter* v. *Fleming,* 104 Vt 76, 81, 156 A 903.

We have not had called to our attention nor are we aware of any case in this jurisdiction in which the precise question here involved has been before this court, namely:—the contributory negligence of one who turns to the left in an attempt to avoid another auto approaching on the wrong side of the road and with which a collision is threatened.

■ The driver who turns to his left in such a situation and drives beyond and over the center of the highway is guilty of a violation of the law of the road. V. S. 47, § 10,219, Par. I. This is a safety statute and its violation makes a prima facie case of negligence. It gives rise to a rebuttable presumption, rather than a conclusive presumption, of negligence and proof of attendant circumstances may, in a civil case, counter-balance or overcome the effect of the statute. *Appleyard Motor Transp. Co.* v. *Ray Co., supra,* at 522 and cases cited.

■ According to the general rule it is not necessarily negligence for the driver of an automobile to turn to the left in meeting and passing a car coming from the opposite direction in an attempt to avoid such car coming on the wrong side, with which a collision is threatened; the question whether negligence exists depends upon the facts and circumstances of the particular case. 5 Am Jur Automobiles, § 322.

We quote with approval from an annotation in 113 ALR 1330, "A traveler is not necessarily guilty of negligence, as a matter of law, because he turns to the left in violation of the law of the road, in an attempt to avoid a vehicle approaching from the opposite direction on the wrong side, with which a collision is threatened, but whether negligence or contributory negligence exists depends upon the facts and circumstances of the particular case." There are also statements in the annotations in 24 ALR 1308 and 63 ALR 280 to the same effect. The annotations cite cases from twenty states as supporting such summary of the law. An examination of them discloses that they are ample authority for the statements.

What the court said in *Luther* v. *Pacific Fruit & Produce Co.*, 143 Wash 308, 255 P 365, 367, is pertinent to the instant case; "Whether such an emergency existed as justified the appellant in turning to the left to avoid an accident, and whether under this emergency the respondent acted with due prudence, was a question of fact for the jury. The law does not scrutinize too carefully an act done by one who has been put in a position of danger by one who inflicts injury upon him, but leaves it to the jury to say whether, under the circumstances, the act in seeking to avoid the danger was that of an ordinarily prudent man."

We hold that, under the circumstances here shown, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence in turning to the left to avoid the threatened collision. The question is what would or might a prudent person do in the situation that confronted the plaintiff and that question was for the determination of the jury. *Hatch* v. *Daniels, supra; Luther* v. *Pacific Fruit & Produce Co., supra; Saylor* v. *Taylor,* 42 Cal App 474, 183 P 843; *Columbia Taxicab Co.* v. *Roemmich,* Mo App, 208 SW 859; *White* v. *Beaumont Implement Co,* Tex Civ App, 21 SW2d 559; *Kull* v. *Advance-Rumely Thresher Co.,* 209 Wis 565, 245 NW 589; *Haner* v. *Wilson-Coffin Trading Co.,* 49 Ariz 402, 67 P2d 487; *Riceland Petroleum Co.* v. *Moore,* 178 Ark 599, 12 SW2d 415; *Coombs* v. *Markley,* 127 Me 335, 143 A 261; *Dunsmore* v. *Ralston Purina Co.,* 90 NH 470, 10 A2d 665.

 The defendant in her brief in support of sustaining the action of the trial court in granting her motion for a directed verdict claims that the negligence of the defendant was not the proximate cause of the accident. This point was not made below and was not a ground of the motion. As a general rule a point not made below is not for consideration here. *Stoddard & Son* v. *Village of North Troy,* 102 Vt 462, 470, 150 A 148; *Breding* v. *Champlain Marine & Realty Co.,* 106 Vt 288, 294, 172 A 625; *Sears* v. *LaBerge,* 116 Vt 168, 172, 71 A2d 687. But, inasmuch as we may sustain a ruling upon any legal ground whether or not brought to the attention of the trial court, *Goupiel* v. *Grand Trunk Ry. Co.,* 94 Vt 337, 344, 111 A 346; *N. E. Acceptance Corp.* v. *Nichols,* 110 Vt 478, 488, 8 A2d 665, this claim is considered.

 The defendant admits she was negligent in driving on the wrong side of the road on the curve. To be actionable, such negligence must be a proximate cause of the accident. *Skoll* v. *Cush-*

*man,* 111 Vt 160, 165, 13 A2d 180. She claims her negligence was not the proximate cause of the accident because she had attempted to regain her own side of the road and would have done so and there would have been no accident except for the conduct of the plaintiff in turning to his left and getting onto the defendant's side of the road. It is apparent from what has already been said herein, including this claim of the defendant and it needs no further comment to show, that it cannot be said as a matter of law that the defendant's negligence was not the proximate cause of the accident. Certainly, it was a jury question.

It was error to grant the defendant's motion for a directed verdict. *Judgment reversed and cause remanded.*