### Mary Ready v. Arthur Peters, Et Al

[117 A2d 374]

May Term, 1955.

Present: **Jeffords, C. J., Cleary and Chase, JJ., and Holden and Shangraw, Supr. JJ.**

Opinion Filed October 4, 1955.

*Leary & Leddy* for the plaintiff.

*Edmunds, Austin & Wick* for the defendant.

**Cleary, J.** This is an action in tort for alleged negligence resulting in injury to the plaintiff. Trial was by jury. The case is here on the plaintiff's exceptions to the exclusion of evidence and to the granting of defendants' motion for a directed verdict at the close of the plaintiff's case.

In passing upon such a motion the evidence must be taken in the light most favorable to the plaintiff and the effect of modifying evidence is to be excluded. If there is any substantial evidence fairly and reasonably tending to support the plaintiff's claim, the question is for the jury. *Campbell* v. *Howard Natl B & T Co.*, 118 Vt 182, 183, 103 A2d 96; *Fletcher* v. *Manning*, 118 Vt 240, 241-242, 105 A2d 264;

*Conger* v. *Gruenig,* 117 Vt 559, 562, 96 A2d 821; *Silveira* v. *Croft,* 116 Vt 420, 421, 422, 77 A2d 911.

On May 10, 1951, which was a bright day with the sun shining, the plaintiff was injured in getting out of a taxicab owned by the defendant Peters and insured by the defendant Peerless Casualty Company. At the time Peters was furnishing two taxicabs to carry passengers attending a funeral and was paid by the funeral director. Peters drove one of the taxicabs and his employee drove the other one. A person named Boucher, who was assisting the funeral director, and a policeman named Beauvais helped persons into the taxicabs at the church and out of the taxicabs at the cemetery. The taxicab in which the plaintiff was a passenger was driven by Peters' employee. This cab was equipped with a foot rest fastened to the floor in front of the rear seat by bolts and brackets so that it could be moved forward and backward on the brackets which acted as hinges. When in a backward position the footrest was close to the rear seat and when in a forward position it was about in the middle of the rear floor and about two inches above it. The taxicab was a seven passenger car, equipped with two jump seats, almost the width of the rear seat and wider than the footrest. When not in use, the jump seats folded flush with the back of the front seat and when in use fitted closely together.

The plaintiff's amended declaration alleged that on May 10, 1951, the defendant Peters was the owner of the jitney involved in the accident, insured by the defendant insurance company, duly licensed and regularly used for carrying passengers for hire; that the plaintiff was such a passenger; that it was the duty of defendant Peters to provide a properly equipped and safe vehicle and to warn the plaintiff of the dangers and hazards therein; but that Peters violated his duties and negligently equipped the jitney and caused and permitted it to be equipped with a large footrest which could be moved forward and backward, thereby creating and resulting in a dangerous and unsafe condition, unknown to the plaintiff; that Peters failed and neglected to warn the plaintiff of the existence and location of the footrest; and that the plaintiff while exercising due care and caution and while free

from contributory negligence, suffered injury by reason of Peters' negligence.

■ V. S. 47, §10,044-IX defines a jitney as a motor vehicle regularly used for carrying passengers for hire. The evidence showed defendant Peters' taxicab was a jitney as defined by our statute. Therefore he was a common carrier, *Schott* v. *Weiss*, 92 NJL 494, 105 A 192, 193 and assumed all the obligations incident to that calling. *Chaput* v. *Lussier*, 132 Me 48, 165 A 573, 574. He was bound to exercise the utmost care that no injury befall the plaintiff. *Sprague* v. *Smith*, 29 Vt 421, 427. The law required from him the highest degree of care respecting his taxicab and its footrest. *Wiley* v. *Rutland Railroad Company*, 86 Vt 504, 512, 86 A 808. His duty to his passenger required of him the most watchful care and the most active diligence for her safety. *Strong* v. *Burlington Traction Co.*, 80 Vt 34, 36, 66 A 786, 12 LRANS 197; *Hadley* v. *Cross*, 34 Vt 586, 588. There was evidence from which the jury, acting fairly and reasonably, could have found that a dangerous condition existed when the footrest was in its forward position and that it was in that position both when the passengers entered the taxicab at the church and when they got out at the cemetery; that when in that position and the jump seats were open for use the footrest could not be seen by a person sitting in a normal position in the rear seat; that the driver who had driven taxicabs, including seven-passenger cars, for twenty-five years knew or should have known the above stated facts, knew the number of his passengers and that all the seats were occupied, and should have warned the plaintiff of the existence and position of the footrest and of the danger, especially so, because of her build and size, and her apparent weight and age. Under the circumstances disclosed by the evidence the question whether Peters, either personally or through his employee, was negligent in failing to warn the plaintiff as alleged in the amended declaration should have been submitted to the jury. *Silveira* v. *Croft*, 116 Vt 420, 422, 77 A2d 911.

The defendants claim they owed no duty to warn the plaintiff because the existence and position of the footrest was obvious and cite *Terrill* v. *Spaulding*, 115 Vt 342, 61

A2d 611. In that case the plaintiff was a tenant of the defendant and was injured by falling into an opening where a furnace register had been removed by the landlord in order to lay a new rug. The plaintiff knew the register had been removed and that the hole was there and there was no evidence that the defendant saw the plaintiff or knew of her presence before she stepped into the hole. Under such circumstances this Court held the defendant owed no duty to warn the plaintiff. It is clearly distinguishable from the present case.

■ The defendants also claim that Peters was not directing or controlling the operation of his taxicab at the time of the accident and that Peters' employee was then acting as the servant of the funeral director. They cite 35 Am Jur 970, §541 and *Salowitch* v. *Kres*, 147 Md 23, 127 A 643. The Maryland case is not in point because the evidence there showed that the defendant without recompense loaned his truck and its driver to another for purposes not connected with the defendant's business. The rule governing such cases in this jurisdiction has been stated repeatedly in our decisions. The master test is: Who has a right to control the offending servant in the performance of his work at the time in question? Various circumstances and things are for consideration, to be sure, in their bearing upon the question just stated, but when that question is answered, the investigation comes to an end. This idea runs through all of our cases. *Papillo's Admx.* v. *Prairie*, 105 Vt 193, 195, 164 A 537, and cases there cited.

■ In the present case the taxi driver was employed by and paid by the defendant Peters, and was directed by Peters to go to the funeral and to carry the mourners. The plaintiff was one of them. The driver was an experienced one, especially at funerals such as this. He knew where to go and the positions to take with his cab at the church, in the funeral procession and at the cemetery. The only evidence of any control exercised over him by others than the defendant was that after his passengers were seated in his taxicab at the church those assisting at the funeral gave him a signal to go ahead and at the cemetery gave him a signal to pull up and stop and where to go after the passengers were out of the cab.

*Morris* v. *Trudo*, 83 Vt 44 at 47-48, 74 A 387, 25 LRANS 33, and *Papillo's Admx.* v. *Prairie*, 105 Vt 193 at 195-196, 164 A 537, are two of our cases in point. In both cases the facts were more favorable to the defendant than in the present case but in each case our Court held that the employee involved in the accident was the servant of the owner of the vehicle since that relation had not been suspended. Because there was evidence fairly and reasonably tending to show that defendant Peters directed and controlled the operation of the taxicab and that the driver was the servant of Peters at the very time of the accident the question was one for the jury to decide. *Morris* v. *Trudo* and *Papillo's Admx.* v. *Prairie, supra.*

■■ The defendants contend that the plaintiff was guilty of contributory negligence as a matter of law. It is true that in order to free herself from contributory negligence it was necessary for the plaintiff to look where she was going and to look effectively. She was required to look with the degree of care that a careful and prudent person would have exercised under like circumstances. It will be presumed that she saw what was within the range of her vision, if she looked. It will not avail her to say that she looked and did not see what she could not have helped seeing if she looked. *Bressett* v. *O'Hara*, 116 Vt 118, 121, 70 A2d 238. The plaintiff had the right to assume that the defendant Peters would exercise the care which the law required of him. Her care and diligence are to be measured in view of this assumption. But she could not for that reason omit any care which the law required of her, as the rule applies only in favor of one whose own conduct measures up to the standard of care. *Hill* v. *Stringer*, 116 Vt 296, 300, 75 A2d 657, and cases cited. The trouble with the defendants' position is that it is predicated upon evidence that makes most strongly against the plaintiff rather than on that which is most favorable to her.

At the time of her injury the plaintiff was 68 years old, weighed about 174 pounds, was about five feet in height, had some arthritis in her left knee and ordinarily wore glasses to sew or read. She was not wearing glasses at the time she was injured.

The plaintiff entered the taxicab through its opened right rear door at the church after the funeral service. At this time her daughter was seated on the left of the rear seat and her grandson, Paul, Jr., was seated on the opened left jump seat. The plaintiff looked to see just where she was going, looked where she was placing her feet as she entered the taxicab, was careful and then had to look up to get hold of a strap that could be used to assist one in getting in the cab. A man behind her was pushing her in. She took hold of the strap, then looked at the seat, turned around and sat down. It took her a little time to turn around and get into her seat. She had just turned around to sit down when her grandson Robert got into the jump seat in front of her which someone had opened for him. The plaintiff's son in law and the driver rode in the front seat of the cab.

When they reached the cemetery the driver did not get out of the cab and did not at any time say anything to the plaintiff about the footrest. When the car stopped in the cemetery Robert got out and immediately thereafter two men reached in and took the plaintiff by the arms to assist her. As she started to get out the plaintiff looked where she was placing her feet and stood right up as quickly as she could, her left foot caught in the footrest, she hollered "Oh, my leg is broken", sort of sat down on it, and the men lifted her up. The plaintiff did not see the footrest at any time while she was getting in or out or while she was in the taxicab. When she got in the taxicab one-half of the footrest was covered by the open left jump seat. While standing outside and before he got into the taxicab the plaintiff's grandson Robert, then 11 years old, could see some of the footrest but not too well. The footrest was brown in color and covered with fabric of the same substance and color as the floor of the cab. The plaintiff was an elderly person, short and heavy, had some arthritis and failing eyesight. She needed assistance in getting in and out of the cab and was hurried by those who were assisting her and she was giving careful attention to where she was placing her feet. The jury might well have found that the footrest was not an obvious danger and that the plaintiff had no reasonable cause to apprehend the danger.

Under the circumstances as disclosed by the evidence it cannot be said as matter of law that the plaintiff was guilty of contributory negligence in failing to observe the footrest as she entered and started to leave the cab.

■■ While on the witness stand the plaintiff was asked by her counsel: "Had there been any footrest in any automobile which you have ridden in, in recent years?" On objection the question was excluded and the plaintiff allowed an exception. The plaintiff's counsel then asked to make an offer and, after being granted permission, said: "It seems to us, Your Honor, the witness's knowledge of other vehicles in which she has ridden in recent years, and her experience would have some bearing on whether she should have anticipated the existence of a footrest here." The evidence was excluded and the plaintiff allowed an exception. The plaintiff claims that her knowledge and experience in this connection would have some probative value as to whether the plaintiff should have anticipated the existence of a footrest in the cab, its location on the floor and her duty to look for it and protect herself from injury; also whether she had the right to assume that the floor of the car was reasonably safe for her exit. As so often held by this Court, any fact or circumstance, which tends to render a claimed fact more or less probable is relevant and admissible in evidence to show whether the fact exists or not. *Gilfillan* v. *Gilfillan's Estate*, 90 Vt 94, 101, 96 A 704, and cases there cited; *Gomez & Co.* v. *Hartwell*, 97 Vt 147, 155, 122 A 461; *State* v. *Vadney*, 108 Vt 299, 301, 187 A 381. Any fact, though it be collateral, which renders a material fact more probable or improbable is proper evidence and may be considered in determining whether such fact exists. *Davis* v. *Randall*, 85 Vt 70, 72, 81 A 250; *Atwood* v. *Joyce*, 109 Vt 30, 33, 192 A 11; *Loomis* v. *Graves*, 116 Vt 438, 439, 77 A2d 838. Here, the plaintiff had alleged that she was free from contributory negligence. The excluded evidence tended to render that issue more or less probable and she should have been allowed to introduce it.　*Judgment reversed and cause remanded.*