# Frank H. Hastings v. William Soule

(100 A2d 577)

October Term, 1953.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed November 3, 1953.

*Finn, Monti & Davis* for the plaintiff.

*Edmunds, Austin & Wick* for the defendant.

**Sherburne, C. J.** In this action the plaintiff seeks to recover for personal injuries and damages to his automobile received in an accident alleged to have resulted from the negligence of the defendant. The cause comes here upon the plaintiff's exceptions after a verdict and judgment for the defendant.

The exceptions relied upon are to the court's charge and to the denial of plaintiff's motions for a directed verdict and to set the verdict aside, and as briefed are all based upon the grounds that the evidence, when viewed most favorably to the defendant, shows as a matter of law that the defendant was guilty of negligence, that such negligence was the sole proximate cause of the accident, and that the plaintiff was free from contributory negligence. So viewed the evidence tends to show the following facts: The accident happened at approximately 7:05 P.M. on December 14, 1951, in Williston on the main and much traveled highway from Montpelier to Burlington, about 1000 feet west of a brightly lighted Esso filling station on its northerly side. This highway consisted of two cement lanes and was 19 feet 6 inches wide with shoulders on each side about 5 feet in width. Easterly toward Montpelier from the place of the accident the highway was straight for about half a mile, but not entirely level. The maximum legal speed there was 50 miles per hour. It was dark and cloudy, and a light snow was falling and melting on the ground as it fell. Just prior to the accident the defendant backed a 1947 Buick sedan with its lights on out of a driveway on the northerly or right hand side of the highway when traveling toward Burlington with the intention of driving there. As he started to back he could see toward Burlington, but his view toward Montpelier was obstructed by trees, a telephone pole and a mail box, and after a little he stopped near the

road where, although his view was obstructed to some extent, he could see the filling station lights all right, and beyond the lights but not very well, and where he and his passenger looked both ways and could see that nothing was coming. Without looking again he backed diagonally across the right lane of the highway and stopped when entirely on the left lane and parallel therewith and facing west toward Burlington. He then shifted gears and looked in his rear view mirror to see if anything was coming behind him, and seeing nothing started forward. When he had moved about 3 feet into the right lane the plaintiff's car hit his right front fender and then ran off the road into a telephone pole. The plaintiff was operating his car on low beam headlights at a speed of 50 miles per hour, and was traveling in the right or northerly lane toward Burlington. He didn't see the defendant's car until very close, and then he increased his speed to get out of the way. The reason given by the defendant why he did not see the plaintiff's car when he looked in his rear view mirror was that it must have been very near and right behind him. He didn't see it until the collision occurred. He testified that had he looked when backing across the road he would have seen the plaintiff's car, and that had he seen it he would not have driven forward into the right lane and there would have been no accident. The reason he gave why he didn't look when backing across the road was that he was busy turning at the time.

█ █ Had the defendant been driving into the highway, instead of backing as he did, it would have been his duty to look for approaching vehicles, and not to proceed into the highway if he saw one coming, unless as a careful and prudent man he believed and had a right to believe that he could pass in front of it in safety. 5 Am Jur Automobiles §306. This same rule applied to him when about to back into the highway. V. S. 47, §10,219, subd. XI provides: "A person shall not turn or back a vehicle of any kind in a public highway without taking due and reasonable care to avoid injury to other users of the highway in so doing." Under this statute it was the duty of the defendant to make such use of his eyes and ears before and while backing as a careful and prudent man

would make in like circumstances. *Mc Kale* v. *Weeks*, 115 Vt 155, 55 A2d 199; *Eisler* v. *Wilder*, 108 Vt 37, 41, 182 A 204; *Lee* v. *Donnelly*, 95 Vt 121, 125, 113 A 542. In the last two of these cases we held that the defendants had not only the duty to look for approaching vehicles before beginning to back, but also the duty to continue to look while backing. In each of these three cases the plaintiff's evidence tended to show that the accident resulted directly from the act of backing. In the instant case the accident would not have happened had the defendant not driven forward into the right lane. Almost invariably a careful and prudent man, while backing from a driveway into a highway for the purpose of turning and driving away, will keep a lookout in both directions for approaching vehicles. But there may be occasions when the highway is straight so that an approaching vehicle can be seen for a long distance, that upon looking and seeing no vehicle approaching he might back into the highway and turn and drive away without looking for approaching vehicles while doing so.

If in the exercise of due care himself, the defendant had the right to assume that the plaintiff would not drive in a negligent manner. *Steele* v. *Fuller*, 104 Vt 303, 308, 158 A 666; *Farrell* v. *Greene*, 110 Vt 87, 90, 2 A2d 194. And the care and diligence of the defendant is to be measured in view of this assumption. *Crossman* v. *Perkins*, 101 Vt 94, 99, 141 A 594; *Porter* v. *Fleming*, 104 Vt 76, 80, 156 A 903; *Page* v. *McGovern*, 110 Vt 166, 171, 3 A2d 543; *Colburn* v. *Frost*, 111 Vt 17, 22, 9 A2d 104; *Hill* v. *Stringer*, 116 Vt 296, 300, 75 A2d 657; *Frenier* v. *Brown*, 116 Vt 538, 543, 80 A2d 524. One driving an automobile along the highway in the dark, as the plaintiff was, must drive at such a speed that he can stop it within the distance he can see ahead, that is within the range of its headlights; and there is a duty at all times imposed upon the operator of a motor vehicle to maintain a lookout for persons and property on the highway, and to use reasonable care to avoid inflicting injuries on such persons or property; and he is chargeable with knowledge of objects on the highway which are in plain view. *Steele* v. *Fuller*, *supra*, 104 Vt at p. 309, 158 A 666; *Kennedy* v. *Laramee*, 115 Vt 358, 362, 61 A2d 547. According to the evidence low beam headlights

ordinarily shine about 125 feet ahead. This is too short a range to stop at high speed. Consequently the care and diligence of the defendant is to be measured by the assumption that anyone approaching from the east at high speed, as the plaintiff was, would be driving with high beam headlights, and would also maintain a lookout and because of the straight road would seasonably become aware of the presence of the defendant's car on the highway because of its lighted head and tail lights, if for no other reason, and would slow down and observe what it was doing, and not drive past it without making some signal of his intention so to do.

■■ According to the defendant's testimony he could see from the driveway, where he stopped before backing into the highway, the filling station lights all right, and beyond them but not very well. It was necessary for him to look in that direction for approaching vehicles and to look effectively, that is, with the degree of care that a careful and prudent man would have exercised in like circumstances. *Rich* v. *Hall*, 107 Vt 455, 462, 181 A 113; *Beattie* v. *Parkhurst*, 105 Vt 91, 94, 163A 589. It will be presumed that the defendant saw what was within the range of his vision, and it will not avail him to say that he looked and did not see what he could not have helped seeing if he had looked. *Bressett* v. *O' Hara*, 116 Vt 118, 121, 70 A2d 238; *Beattie* v. *Parkhurst*, *supra*. But although the highway there is straight for half a mile, it may well have been that the defendant's view from where he stopped in the driveway was obstructed so that he could not have seen the headlights of an approaching car much beyond the filling station approximately 1000 feet away.

It is impossible to determine from the evidence the distance the plaintiff's car was away when the defendant looked in the direction from which it was coming just before he backed into the highway. If we knew how long a time it took the defendant, after looking to see if any car was coming from the east, to start to back and back diagonally across the right lane so as to be parallel with the highway, to stop, to shift gears, to look in the rear view mirror, and then to start forward and proceed until 3 feet into the right lane, we could compute this distance by finding how far the plaintiff traveled at 50

miles per hour, or $73\frac{1}{3}$ feet a second, in that time; but there is no evidence as to how long a time this took. Consequently, for aught the evidence shows, the plaintiff's car may have been so far away that its headlights had not come into the range of defendant's vision when he looked toward the east.

As we have seen, this accident would not have happened if the defendant had not driven forward into the right lane. The question presented as to whether or not the defendant was negligent comes down to this: Having looked to the east for approaching cars just before backing into the highway and having seen none within the range of his vision of over 1000 feet, [1] would a prudent man, while backing into the highway as the defendant did, have looked again while doing so, in view of the defendant's testimony that if he had looked while backing he would have seen the plaintiff's car and if he had seen it he would not have driven into the right lane, or [2] not having looked while backing, would a prudent man, before starting into the right lane, have done something more than look in his rear view mirror to discover if any car was approaching in the right lane from the rear so near as to make it dangerous to drive into that lane. Had the plaintiff been driving with high beam lights they would have shown through the windows of defendants' car while backing or while stopped, so that the defendant should have become aware that the plaintiff's car was approaching from the east in time to have avoided turning into the right lane ahead of it. The plaintiff had ample distance to have discovered the presence of the defendant's car ahead of him in time to slow down and even stop before reaching it. Had he slowed down and sounded his horn the defendant could have been warned in time not to turn into the right lane. The reason the defendant gave why he did not see the plaintiff's car when he looked in his rear view mirror was that it must have been very near and right behind him. He was in the left lane and the plaintiff was traveling in the right lane, so was not directly behind him. When one car is about to pass another under such circumstances there is a blind spot where the passing car is not readily seen in the rear view mirror of the car being passed. For aught the evidence shows this may have been the case

here. It is argued that the defendant should have observed the light from the plaintiff's low beam headlights and thus have become aware of the plaintiff's approach before starting forward. Had he looked out of his side windows, particularly on his passenger's side, he might possibly have seen this light in time, but it could have lighted up the highway about him and consequently been so observed only for an instant. Because of the absence of any evidence as to how long an interval elapsed from the time the defendant stopped and looked before he backed into the highway until he started forward into the right lane, and in view of all the circumstances and the right to assume that the driver of a car approaching from the east would exercise due care in the respects previously indicated, we cannot say that a prudent man, while backing as the defendant did, would have looked again, or would have done something more than look in his rear view mirror to discover if any car was approaching in the right lane from the rear so near as to make it dangerous to drive into that lane. Consequently we cannot say that the defendant was guilty of negligence as a matter of law. The question of his due care was for the jury to decide. In view of this holding we need not discuss the question of whether the defendant's negligence was the proximate cause of the accident.

We have referred to certain rules of conduct applicable to the plaintiff. On the evidence the jury could find that the plaintiff was guilty of negligence, in that he drove 50 miles per hour on low beam headlights, and failed to maintain a lookout for persons and property on the highway and because of its lighted head and tail lights was seasonably charged with knowledge of the presence of defendant's car and failed to use reasonable care to avoid collision with it. And the jury could find that such negligence contributed proximately to the accident, in that had the plaintiff driven at a safe speed for low beam headlights or maintained a proper lookout the accident would not have happened, because the defendant would have had time to drive away ahead of plaintiff's car without being run into or the plaintiff would have seen defendant's car in time to avoid collision with it. The plaintiff cannot be held free of contributory negligence as a matter of law.

The result is that plaintiff's exceptions must be overruled.

An opinion affirming the judgment of the county court in this cause was handed down at the last May term, but the plaintiff having seasonably filed a motion for reargument on the ground of alleged errors in the opinion relative to the question of whether the defendant was as a matter of law guilty of negligence which proximately contributed to the accident, the judgment entry has been witheld. The motion was granted and the cause has been reargued upon the questions raised therein. Although we have now arrived at the same result as before, the reargument and further study have suggested some changes, which have been incorporated into this revised opinion.

*Let the former entry of "Judgment affirmed" go down.*