### Agnes G. Smith v. Nathan Grove

[119 A2d 880]

Special Term at Rutland, November, 1955.

**Present: Jeffords, C. J., Cleary, Adams and Chase, JJ., and Smith, Supr J.**

Opinion Filed January 3, 1956.

*Clayton H. Kinney* for the defendant.

*Leahy & Denault* (of Claremont, N. H.) for the plaintiff.

**Adams, J.** This is an action of tort to recover damages because of personal injuries and property damage sustained by the plaintiff as the result of an automobile accident. Trial was by jury with a verdict and judgment for the plaintiff. The case is here on exceptions of the defendant to the denial of his motions for a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict.

The evidence showed that the automobile in which she was a passenger was owned by her and at the time and place in question it was operated by her son, Reginald, with her permission, knowledge, consent and approval and for her purposes. The case was tried below on the theory that he was the agent of the plaintiff and his negligence, if any, was imputable to her. That fact was conceded in oral argument here.

▇ The motion for a directed verdict so far as briefed is on the ground that the evidence viewed in the light most favorable to the plaintiff shows that she or her agent, who was driving the auto, was guilty of contributory negligence as a matter of law. The other grounds of the motion, not having been briefed, are waived. *Strout* v. *Wooster*, 118 Vt 66, 71, 99 A2d 689.

The evidence in some respects was very conflicting but, viewed in the light most favorable to the plaintiff, as it must be, the jury acting reasonably could find the following material facts: The plaintiff's auto was a 1948 Buick convertible. On November 28, 1951, she was proceeding from East Randolph through the village of White River Junction and thence southerly on U. S. Route 5 in this state to her home in Charlestown, N. H. Her son, Reginald, who was 17 years old and had a driver's license, was driving and the plaintiff was sitting on the seat beside him. They intended to stop at the International Harvester place, that was located southerly of White

River Jct., to make a purchase. They did not know its exact location and were watching for it as they proceeded up a curve and grade immediately south of the village. This I. H. place was on the easterly and their left hand side of the highway and a short distance south of the top of the grade. The curve was a gradual one and to their right. From the top of the grade and south of the curve, the highway was straight and level for. a considerable distance.

There was a large chimney in the middle of the front of the I. H. building with the large letters, "I. H. " on it and there was a path leading from the highway to the middle of the front of the building. There was a driveway 50 feet wide southerly of the building for customers to use in reaching a parking area adjoining the building on its southerly side. It was 66 feet from the path along the highway to the northerly side of the driveway.

The defendant, driving an Oldsmobile "88", was proceeding southerly on the same highway. He was behind the plaintiff. It was a cold, clear day. The highway was black top, twenty-two feet wide and bare with some snow packed down along the edges. It was about 11:30 in the forenoon and as the plaintiff's auto neared the top of the grade, she saw the top of the chimney with the letters, "I. H." on it and told Reginald that was where they were supposed to stop. He continued along on his right hand side of the highway and slowed down to a speed of 10 to 12 miles per hour. When they reached a point in the highway about opposite the path, the plaintiff looked back through the rear window of her auto and saw no auto coming. She could see then to the rear about 350 feet.

When the plaintiff's auto was a short distance south of a point in the highway opposite the chimney, Reginald looked in the rear view mirror over the windshield and in a rear view mirror on the left hand side of the auto and saw no auto coming from the rear. He could then see the highway to the rear for about 350 feet. He then threw on the directional light signalling for a left turn, but he made no hand signal. He then turned gradually from the right hand side of the highway toward the driveway into the I. H. place. When the front

end of the plaintiff's auto was off the highway surface and almost in the driveway, she looked through the left side window and saw the defendant's auto coming on the left side of the highway and as she expressed it in her testimony, "It was right on top of us." She made a spontaneous and forceful exclamation to Reginald. The front of the defendant's auto hit the left rear side of the plaintiff's auto. After the collision, it was entirely off the highway and turned so that it faced north. The defendant's auto stopped in its left lane and still headed south.

The plaintiff was thrown against the right hand door of her auto and her back hit either the arm-rest or door handle. It injured a disk in her back. It cost $383. to repair the plaintiff's auto. The plaintiff, Reginald and the defendant went into the I. H. office. The plaintiff told the defendant at least twice that an officer ought to be called. The defendant insisted that a "cop" was not needed. No officer was called.

In support of his claim of contributory negligence on the part of the plaintiff and her driver, Reginald, the defendant claims that, as a physical fact, his auto must have been in sight when the plaintiff looked through the rear window of her auto and did not see the defendant's auto as she testified. Also, that it must have been in sight when Reginald looked in the rear view mirrors and did not see it as he testified. Also, that Reginald was guilty of contributory negligence in failing to give a hand signal, as the law and regulations then provided, showing his intention to make a left turn and using only a directional signal as he testified.

■■ It is true, as claimed by the defendant, that the burden was on the plaintiff to show that she and Reginald were free from contributory negligence and ordinarily that question is for the jury, where the law has no settled rule of diligence, but when the material facts are undisputed and are so conclusive that but one reasonable deduction can be drawn therefrom, the question is one of law for the court. It is also true, however, that, although such burden was on the plaintiff, direct and affirmative proof of due care was not required. It was enough to carry the question to the jury to give evidence

of such facts and circumstances as warranted an inference of due care. *Miller* v. *Sears*, 118 Vt 302, 304-305, 108 A2d 529, and cases cited.

■ ■ It is true, too, as the defendant contends, that an operator of a motor vehicle is charged with knowledge of objects in the highway that are in plain view. *Emery* v. *Small*, 117 Vt 138, 140, 86 A2d 542. In other words, it will be presumed that he saw what was within the range of his vision and it will not avail him to say that he looked and did not see what he could not have helped seeing if he had looked. *Hastings* v. *Soule*, 118 Vt 105, 109, 100 A2d 577.

■ Of course, it is true, also, as claimed by the defendant, that a court cannot ignore the physical facts that are before it, and, though a witness testifies that a thing is so, his testimony will not be given credence when indisputable evidence to the contrary is before the court. *Ellison* v. *Colby*, 110 Vt 431, 436, 8 A2d 637.

■ ■ At the time of the accident, November 1951, V. S. 47, §10,219, subdivision XVI read as follows,- "DIREC-TION AND STOP SIGNALS. The operator of a motor vehicle, before changing his direction or materially slackening his speed, shall give warning of his intention with such hand signal as the commissioner of motor vehicles may prescribe, or with a mechanical or lighting device approved by such commissioner;" It is apparent that this statute is in the alternative. *Mooney* v. *McCarthy*, 107 Vt 425, 430, 181 A 117. The warning is with a hand signal *or* with a mechanical or lighting device. The defendant is mistaken when he claims that the driver must give a hand signal to comply with the statute. However, an examination of the transcript discloses that, without objection, the case was tried below on that theory so it becomes the law of the trial and binding upon the parties here. *Macauley* v. *Hyde*, 114 Vt 198, 204, 42 A2d 482, and cases cited.

■ ■ This statute is a safety statute. A violation thereof makes a prima facie case of negligence. It gives rise to a rebuttable rather than a conclusive presumption of negligence. The presumption, of itself, alone, contributes no

evidence and has no probative value. It takes the place of evidence temporarily. Its function is to shift the burden of going forward with evidence on the presumed fact to the party against whom the presumption operates. When such party produces evidence fairly and reasonably tending to show that the fact is not as presumed the presumption disappears. It is for the court to consider in ruling as to whether there has been sufficient evidence so introduced to make it proper to submit the issue to the jury. If so the fact in issue is to be established by the evidence without aid from the presumption. It is not for consideration by the jury, for they are concerned only with the evidence presented to them. *Tyrrell* v. *Prudential Ins. Co.*, 109 Vt 6, 23-24, 192 A 184, 115 ALR 392; *State* v. *Lizotte*, 109 Vt 378, 387-388, 197 A 396; *Naylor* v. *Dragoon*, 116 Vt 552, 554, 80 A2d 600; *State* v. *Demars*, 118 Vt 175, 177-178, 102 A2d 845.

The defendant relies upon *Kennedy* v. *Flagg*, 145 Me 399, 75 A2d 850. There, in a per curiam opinion, the court apparently held that one who fails to give an appropriate signal of his intention to make a left turn is conclusively guilty of negligence. Admittedly, in some jurisdictions the breach of a safety statute is negligence per se. It is not the rule in this jurisdiction. *Landry* v. *Hubert*, 101 Vt 111, 112-113, 141 A 593, 63 ALR 396, and cases cited. It is not necessary to cite the numerous cases since that case that have approved the rule.

Here the evidence was very conflicting and nearly all of the material facts were disputed. We mention some of them. The plaintiff's evidence came from her and Reginald and is included in our summary of the facts that the jury could reasonably have found. The evidence on behalf of the defendant came from him. He testified that the road was snowy and slippery with patches of snow and ice on it. As he approached the I. H. place he saw an auto parked on the right hand side of the highway. It was about 300 feet from him and headed south with all four wheels off the cement. He was traveling at a speed of 35 miles per hour and continued at that rate. When he was about 50 feet from that auto, it, without any warning, started up from a still position, turned

to its left and came right across the highway in front of him. He did not see any directional lights displayed on the other auto. He put on his brake, but didn't blow his horn. He turned to his left too, but the whole road was slippery at that point and he couldn't stop. Practically the whole front of his auto collided with the left rear side of the other auto. After the collision, both autos were turned around and headed north, the other auto on the right hand shoulder and his on the traveled part of the highway. (The plaintiff and Reginald categorically denied that the plaintiff's auto was stopped or parked before the collision or that the defendant's auto was headed north after the collision.) The defendant further testified that, at the time of the collision, his auto was a little east of the center of the highway and the front end of the plaintiff's auto was close to the easterly edge of the highway. At another time, he testified that the front end of the plaintiff's auto, at the time of the collision, was just over the center of the highway and its rear was on the right hand side of the highway.

At 35 miles per hour, the defendant's auto would travel 51⅓ feet per second. Thus it would take it 7 seconds to travel the 350 feet that both the plaintiff and Reginald said they could see to the rear when they looked and saw no car coming and when the plaintiff's car was traveling 10 to 12 miles per hour or about 17 feet per second. The defendant in his brief by computation from these figures claims that his auto must have been in sight when both the plaintiff and Reginald looked and testified that they did not see it. He says such is a physical fact that cannot be ignored by the court. However, he makes his computations from the point where the collision took place and to reach his result he takes as conclusively established his speed at 25 miles an hour. From that speed he attempts to show another fact as conclusively established.

If we consider the entire testimony of the defendant, the plaintiff's auto would start from a standing still parked position entirely off the highway, make a left turn and travel a sufficient distance so that its front end reached a point at least easterly of the center line of a twenty-two foot wide

highway. It would do this in one second and while the defendant's auto traveled fifty feet, or perhaps two seconds at the most, if we allow for some slowing down when the defendant put on the brakes but couldn't stop because the road was slippery. Manifestly, a jury could reasonably have disregarded his testimony as to the position of the plaintiff's auto when the defendant first saw it.

 It needs no citation of authorities to the proposition that the credibility of the witnesses is for the jury. Most of the testimony of the defendant was contradicted and his testimony in regard to his speed, certainly, was contradicted by inference. Contradictions and contradictory inferences are for the jury. *Campbell* v. *Howard National Bank*, 118 Vt 182, 183, 103 A2d 96.

 In order to have certain oral testimony held entitled to no credence because of the existence of a physical fact, it must appear that such fact denies the truth of such oral testimony beyond dispute. *Barrows* v. *Powell*, 113 Vt 109, 114, 29 A2d 708. The evidence tending to show as a physical fact that the defendant's auto must have been in sight when the plaintiff and Reginald looked and testified that they did not see it does not meet that test. For other cases, where we have held that the physical facts relied on did not constitute indisputable evidence in opposition to oral evidence of a witness on a certain point and that such oral evidence made a question for the jury on that issue, it not being impossible, see *Barrows* v. *Powell, supra,* 113 Vt at page 116, 29 A2d 712, and cases there cited; also *Peck* v. *Gluck*, 113 Vt 53, 56, 29 A2d 814; *Ranney's Admr.* v. *St. Johnsbury Trucking Co., Inc.,* 116 Vt 13, 16, 68 A2d 697; *Pomainville* v. *Bicknell*, 118 Vt 328, 330, 109 A2d 342.

It cannot be said that, on the evidence in the instant case, the plaintiff and her driver were guilty of contributory negligence as a matter of law. It was a jury question and there was no error in denying the motion for a directed verdict.

While they are intersection cases, *Bressett* v. *O' Hara*, 116 Vt 118, 70 A2d 238, and *Smith* v. *Squire*, 119 Vt 59, 118 A2d 355, are quite in point here. In both of them the plain-

tiff's evidence tended to show that before he entered the intersection he looked in the direction from which the defendant was coming and did not see any automobile. In each of them the claim was made that the plaintiff was guilty of contributory negligence as a matter of law because he must have seen the defendant approaching the intersection. The same result was reached in each case as we have reached here.

What we have said on the motion for a directed verdict disposes of the exception to the denial of the motion to set aside the verdict as it is briefed on the same ground only. In the respect here briefed, they are the same in nature and substance. *Duchaine* v. *Ray*, 110 Vt 313, 318, 6 A2d 28; *McLaughlin* v. *Getman*, 117 Vt 25, 26, 83 A2d 513.

*Judgment affirmed.*