### Enrico Scrizzi v. Dayton R. Baraw

[ 248 A.2d 725 ]

October Term, 1968

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed December 3, 1968

*Davis, Martin & Free* for the Plaintiff.

*Wick, Dinse & Allen* for the Defendant.

**Shangraw, J.** This is an action in tort brought by the plaintiff against the defendant to recover for damages sustained by the plaintiff as a result of a motor vehicle accident which occurred the 14th day of June, 1964 on Route U.S. 2 in the City of Montpelier. Trial was had by jury in the Washington County Court.

At the close of the evidence the plaintiff moved for a directed verdict on the issue of defendant's liability. Plaintiff's motion was granted.

During the course of argument the plaintiff's attorney informed the jury of the amount of the *ad damnum* in the complaint. The defendant did not object at the time, but at the end of the argument the defendant moved for a mistrial. This motion was denied.

The jury returned a verdict of $19,000.00 for the plaintiff. Defendant moved to have the verdict set aside and for a new trial. This motion was denied. Following entry of judgment on the verdict the defendant seasonably appealed to this Court.

On June 14, 1964, the plaintiff was the owner and operator of a 1962 Chevrolet automobile which he was operating in a westerly direction on Route U.S. 2 in Montpelier. He had left Barre for Montpelier at about 4:30 P.M. with the intention of visiting his doctor in Montpelier for a semi-annual physical checkup.

The highway in question consisted of two lanes and is the main thoroughfare between Barre and Montpelier. Traffic was generally heavy and moving slowly. As the line of traffic approached the Green Mountain Power Company property it came to a halt. A construction company was putting in a sewer and had a tractor or loader going back and forth in the highway.

Plaintiff's automobile was the last in the line of cars that had stopped in the right lane of traffic some twenty to twenty-five feet from the rear of the automobile directly ahead of him. At this point the

plaintiff could see ahead for some one hundred to one hundred and fifty yards, and to the rear from seventy-five to one hundred yards.

Defendant Baraw, a self-employed service station operator, at the time and place, was also driving an automobile towards Montpelier which collided with the rear end of plaintiff's car. Prior to the collision the defendant had stopped at a "Y" intersection and waited for a car to pass which was going in the opposite direction. He then started ahead and was travelling about 30 mph at the time of the impact. When the defendant first observed the plaintiff's car at rest he applied his brakes and tried to stop his car but had insufficient time to avert the accident.

Defendant testified that he did not see the equipment which stopped the traffic. Further, that he never saw any tail lights or brake lights on the rear of plaintiff's automobile, nor did he see any hand signal by the plaintiff.

The defendant further testified that he could never understand why he had not seen the plaintiff's car. This was despite the fact that it was stopped in plain view, on a perfectly straight stretch of road, in its own lane of traffic, and in broad daylight. When asked whether he took his eyes off the road, the defendant testified that he "must have."

Defendant first claims that the trial court erred in directing a verdict for the plaintiff on the issue of liability. He contends that on the evidentiary facts he was not negligent as a matter of law, and that an issue of fact was presented for the jury's consideration.

■■ The circumstances of each case must determine the degree of alertness required of an operator of an automobile in keeping a lookout for road hazards. He has the duty to maintain a reasonable and proper lookout for persons and property on the highway, and to use reasonable diligence to avoid injuries to such persons or property. *Campbell* v. *Beede,* 124 Vt. 434, 436, 207 A.2d 236; *Beaucage* v. *Russell,* 127 Vt. 58, 62, 238 A.2d 631.

■ In the operation of a motor vehicle, the law requires the operator to govern his speed and maintain a reasonably safe distance behind the vehicle which he is following to provide for the contingency of the lead vehicle coming to a sudden halt. In this situation, failure to so control the factors of time and space which results in the misfortune of injury constitutes negligence. *Ploesser* v. *Burlington Rapid*

*Transit Co.,* 121 Vt. 133, 141, 149 A.2d 728; *Young* v. *Lamson,* 121 Vt. 474, 478, 160 A.2d 873.

■ The operator of a motor vehicle is charged with knowledge of objects in the highway that are in plain view. *Emery* v. *Small,* 117 Vt. 138, 140, 86 A.2d 542. In other words, it will be presumed that he saw what was within the range of his vision, and it will not avail him to say that he looked and did not see what he could not help seeing if he had looked. *Smith* v. *Grove,* 119 Vt. 106, 111, 119 A.2d 880, citing *Hastings* v. *Soule,* 118 Vt. 105, 109, 100 A.2d 577.

■ As stated in *Langdon-Davies* v. *Stalbird,* 122 Vt. 56, 58, 163 A.2d 873, it is difficult to find a more lucid explanation of the meaning of the direction of a verdict than that of Campbell, J. in *Jerke* v. *Delmont State Bank,* 54 S.D. 446, 223 N.W. 585, 72 A.L.R. 7, which opinion is quoted in full in Wigmore on Evidence, Vol. 9, 2495, pages 306-311:

"When a court holds in any given case or upon any given facts, that the direction of a verdict is proper, it is not in any strict sense announcing a rule or doctrine of law but is merely announcing its judgment or opinion, as a matter of reason and logic, that in that case and upon those facts reasonable minds could not differ as to the result reached."

The foregoing is consistent with the case law of this State.

23 V.S.A. §1046 provides:

"The operator of a motor vehicle, before changing his direction or materially slackening his speed, shall give warning of his intention with the hand signals as provided in §1052 of this title, or with a mechanical or lighting device approved by the commissioner of motor vehicles."

The defendant attempts to seek the benefit of this statute by claiming that the jury could have inferred from the evidence that a proper signal was not given by the plaintiff and that his failure so to do gives rise to a presumption of negligence which could bar the plaintiff's recovery, citing *Smith* v. *Grove, supra,* 111.

In support of defendant's claim on this point, he urges that he did not recall seeing any hand signals given by the plaintiff or tail lights on the rear of plaintiff's automobile before colliding with it. This is probably quite true when we consider the fact that the de-

fendant never even saw plaintiff's automobile until shortly before the collision. It must be concluded that defendant would not have seen a hand or mechanical signal even if given.

■ The undisputed evidence demonstrates that the accident did not occur while the plaintiff was slackening his speed, or changing direction. On the contrary plaintiff had stopped on the highway and had been in that position long enough to note the cause of the delay ahead and that there were no cars in his immediate rear. The above statute has no application to the facts in this case. Defendant cannot prevail on this issue.

■ In disposing of defendant's claim of error in directing a verdict in favor of the plaintiff on the issue of liability, the evidence clearly reveals the defendant's negligence as the proximate cause of the accident. This is the only reasonable inference to be drawn from the record. Further, the defendant has failed to produce any evidence of plaintiff's contributory negligence.

■ It has been said that it is proper to direct a verdict for the plaintiff where the evidence would not support a verdict for the defendant, but would have to be set aside. 53 Am. Jur. Trial, §386, p. 311. Such is the fact here. Reasonable minds could not differ as to the result reached by the trial court in directing a verdict for the plaintiff on the issue of liability. This is the standard as set forth in *Langdon-Davies* v. *Stalbird, supra,* at p. 58, 163 A.2d 873.

Mr. Scrizzi was 56 years old at time of the accident and in good health. Following the accident he drove to Montpelier to keep his appointment with Dr. Zagroba for his usual physical check-up. He thereafter drove home during which time he experienced pains in the neck and double vision. On returning home he immediately consulted Dr. Ernest V. Reynolds who took x-rays. At this time plaintiff was experiencing headaches, dizziness and a sore neck. Plaintiff was not hospitalized.

Dr. Reynolds testified that in his judgment the plaintiff had brain damage. On trial the doctor described the condition as a post concussion syndrome, and that the main symptoms that usually apply are recurrent—"frequent headaches, dizziness, irritability, and sometimes a change in the individual's personality." The doctor also testified that it was very likely that Mr. Scrizzi would have times when he would be unable to work.

Following the accident plaintiff has had occasional blackouts, dizzy spells, fits of depression, and problems with his vision. On trial he also testified of loss of memory, inability to concentrate, nervousness, excessive sweating, headaches, and difficulty in sleeping. Since the accident plaintiff has continued on medication and has not only consulted Dr. Reynolds, but also Dr. Kingston and Dr. Wallman.

Plaintiff was employed as a skilled granite sandblastman at time of the accident. This trade included carving and lettering stone. Following the accident he has not been able to function completely and could only perform one phase of the sandblast operation. This resulted in a reduction of his wages while so employed and a limitation of his available employment.

Plaintiff was unable to work eighty-four days at a loss of wages of $1,940.60. The damage to his automobile was approximately $500.00. He also incurred expenses for medication and services of the doctors. Plaintiff's physician testified that further medication and medical treatment and observation would be required.

Plaintiff's attorney, on two occasions during argument informed the jury of the amount of the ad damnum in the writ. Following plaintiff's first argument, and also at the conclusion of all the arguments, the defendant moved for a mistrial on the ground that such reference was prejudicial and constituted reversible error.

The motion for a mistrial was based upon counsel's reference to the *ad damnum* in the writ and was addressed to the trial court's discretion. Such reference is not prejudicial *per se*. Here, the burden lies on the defendant to produce a record showing prejudice. He is cast with the burden of showing prejudice sufficient to support a discretionary ruling by the trial court in his favor.

Nothing appears in the record to establish in what context such reference was made. The *ad damnum* is set forth at Fifty Thousand Dollars. The verdict was for $19,000.00. In view of the elements of damage sustained by the plaintiff, and the size of the verdict, as compared with the *ad damnum,* it can hardly be said that plaintiff's reference thereto resulted in prejudice. At least, such fact does not appear. In this case, the defendant has failed to demonstrate that the trial court's discretionary ruling denying the motion for a mistrial was improper.

The amount of damage alleged in a complaint is not evidence, nor proof of the amount due a plaintiff. *Mattison* v. *Smalley,*

122 Vt. 113, 118, 165 A.2d 343. Whether or not comment on the *ad damnum* in a writ is prejudicial depends upon the context in which it is used during trial. By placing emphasis on this subject counsel creates the possibility of prejudice and does so at his peril.

Lastly, we consider the defendant's motion to set aside the verdict and order a new trial on the grounds that it was excessive, contrary to and against the weight of the evidence.

In passing on the claimed excessiveness of the verdict, we call attention to *Wilford* v. *Salvucci,* 117 Vt. 495, 95 A.2d 37. At page 496, 95 A.2d at page 40 of the opinion this Court stated:

> "Where the verdict is either so great or so small as to plainly indicate that in reaching it the jury either disregarded the testimony, or acted from passion or prejudice, it is the duty of the court to set it aside. Where the damages rest in the judgment of the jury they are, of course, not to be held either excessive or inadequate, unless they are grossly so."

The undisputed evidence reveals serious injuries to the plaintiff. He sustained property damage and has expended money for medicine and medical attention. He will also require medication and medical treatment in the future. The amount allowed by the jury has a reasonable basis on which the verdict can stand. Considering all factors we hold that the verdict is not excessive.

By defendant's motion to set aside the verdict, it is further claimed that the verdict was "contrary to" and "against the weight of the evidence." These two reasons were directed to the discretion of the trial court. *Merrill* v. *Reed,* 123 Vt. 248, 251, 185 A.2d 737. The right to set aside a verdict is based, ultimately on the proposition that an injustice would result from permitting the verdict to stand. *Grow* v. *Wolcott,* 123 Vt. 490, 493, 194 A.2d 403; *Russell* v. *Pilger,* 113 Vt. 537, 551, 37 A.2d 403. Verdicts are not lightly to be disregarded, for it is the proper province of the jury to settle questions of fact. *Grow* v. *Wolcott, supra,* p. 493, 194 A.2d 403.

In passing on defendant's motion, the evidence must be viewed in the light most favorable to the plaintiff and the effect of modifying evidence is to be excluded. *Eastman* v. *Williams,* 124 Vt. 445, 449, 207 A.2d 146. The verdict is amply supported by the evidence. There appears no abuse of discretion on the part of the trial court in denying the motion to set aside the verdict on the last two grounds above urged by the defendant.

We have found nothing in the record that convinces us that the verdict in this case rests on error.

*Judgment affirmed.*