## Gary and Sunee Roberts v. State of Vermont

[514 A.2d 694]

No. 83-170

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed June 20, 1986

*Cheney & Brock*, Montpelier, for Plaintiffs-Appellees.

*Dinse, Allen & Erdmann*, Burlington, for Defendant-Appellant.

**Gibson, J.** This appeal, after trial by jury in Washington Superior Court, arises from an automobile accident at an intersection normally controlled by a traffic light installed and maintained by defendant State of Vermont. Plaintiffs Sunee and Gary Roberts sought damages for injuries they alleged were proximately caused by defendant's negligent failure to maintain the traffic light in an operable condition or to adequately warn motorists of the inoperation of the light. Defendant raised the affirmative defense of contributory negligence, alleging that Mrs. Roberts, the driver, was negligent in failing to exercise the proper degree of care in entering the intersection. The jury, finding Sunee Roberts to be 25% negligent and defendant 75% negligent, awarded $48,750.00 to plaintiff Sunee Roberts and $20,562.50 to plaintiff Gary Roberts. Judgment was entered on the verdict.

Defendant on appeal claims that the trial court erred: (1) in denying defendant's motion for a directed verdict; (2) in failing to properly instruct the jury on the duties of plaintiff-driver Sunee Roberts; (3) in instructing the jury regarding the State's duty of

care; and (4) in charging the jury that the plaintiffs could assume that defendant's employees would exercise due care. Defendant also claims that the award to plaintiff Gary Roberts was excessive. We reverse and remand for a new trial.

On February 8, 1981, at approximately 1:00 a.m., plaintiffs' car collided with a car driven by Denise St. Pierre at the intersection of State Aid Highway 62 and Berlin Street in Berlin, Vermont. Plaintiffs' car entered the intersection from the north and Mrs. St. Pierre's vehicle entered the intersection from the east. Traffic at this intersection was normally controlled by a traffic light suspended above the intersection that would exhibit red, yellow, and green signals. A malfunction was discovered during the afternoon of February 7, 1981. At that time, defendant put the light in a flashing mode so that it showed yellow in all directions. Later that evening, the light became totally inoperative so that no light showed in any direction. Defendant, unable to fix the light, placed four sawhorse warning devices, one at each corner, to mark the intersection. Each device consisted of two diagonally striped wooden panels on a sawhorse surmounted by a flashing yellow light. This was the state of the intersection at the time of the accident.

The plaintiffs were returning home at about 1:00 a.m. from a visit with Mr. Roberts' mother in Marshfield. Mrs. Roberts was driving and Mr. Roberts was asleep on the seat beside her. Mrs. Roberts was familiar with the intersection because the plaintiffs' home was located about one-fourth of a mile away, and she drove through the intersection each day going to and from work. Mrs. Roberts testified that she was driving at "about 25 or 30 miles an hour" and prepared to slow down as she approached the intersection. She looked at the traffic signal, but no lights were exhibited. She then looked to see if any traffic was approaching from the east. Seeing nothing, she entered the intersection where she was struck by the other vehicle. Mrs. Roberts testified that she did not see any warning device nor the other vehicle's headlights before the collision. Mrs. St. Pierre was unfamiliar with the intersection. Like Mrs. Roberts, Mrs. St. Pierre stated that she saw no lights from the other car nor any warning device with flashing lights.

# I.

In the trial below, defendant moved for a directed verdict claiming that the plaintiffs failed to prove that defendant's acts or omissions were the proximate cause of their injuries. The motion was denied and defendant here claims that this was error.

In denying defendant's motion for a directed verdict, the trial court determined that there was sufficient evidence reasonably tending to support the plaintiffs' claim, and that the matter was proper for resolution by a jury. See *Macey* v. *James*, 139 Vt. 270, 271, 427 A.2d 803, 804 (1981). Viewing the evidence in a light most favorable to the nonmoving party, *Vermont National Bank* v. *Dowrick*, 144 Vt. 504, 509, 481 A.2d 396, 399 (1984), we agree.

"The law of proximate cause calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences." *Rivers* v. *State*, 133 Vt. 11, 14, 328 A.2d 398, 400 (1974). Without the limitations of proximate cause, the scope of liability for a defendant's negligence may be extended almost infinitely by ever-expanding causal links; proximate cause is the law's method of limiting such liability. The rule in Vermont defining that limit is set forth in *Woodcock's Admr.* v. *Hallock*, 98 Vt. 284, 290, 127 A. 380, 382 (1925):

> One shown to have been negligent is liable for all the injurious consequences that flow from his negligence until diverted by the intervention of some efficient cause that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice.

This Court also observed that:

> In the practical application of this rule, however, delicate and difficult distinctions necessarily arise. . . . The determination of what is . . . proximate and what [is] remote . . . is more a matter of analysis and synthesis than of definition.

*Id.*

Proximate cause is ordinarily an issue to be resolved by the jury "unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Schaefer* v.

*Elswood Trailer Sales,* 95 Idaho 654, 656, 516 P.2d 1168, 1170 (1973). See also *Wells* v. *Village of Orleans, Inc.,* 132 Vt. 216, 222, 315 A.2d 463, 467 (1974) ("in contributory negligence, . . . proximate cause is a question of fact for the finder of fact to determine."); *Nyman* v. *Cedar City,* 12 Utah 2d 45, 49-50, 361 P.2d 1114, 1117 (1961) ("When the evidence is such that there is doubt about whether one of two causes is a proximate cause of an injury so that the question could reasonably be found either one way or the other, the question is one of fact for the court or jury."). Moreover, "[t]here may be more than one proximate cause concurring to produce an injury." *Choiniere* v. *Sulikowski,* 126 Vt. 274, 278, 229 A.2d 305, 308 (1967).

We are unable to say as a matter of law that all reasonable minds would conclude that the plaintiffs' actions constituted the sole proximate cause of the accident. The record establishes that it was dark and that both drivers did not see the warning devices or each other's headlights. Other than this testimony, the evidence and exhibits presented at trial addressed daytime visibility. There was the distinct possibility that drivers unfamiliar with the intersection would pass through it at a high rate of speed. Mrs. St. Pierre was not familiar with the intersection, nor was she aware that it was normally controlled by a traffic signal. Defendant's witness conceded that sawhorse warning devices are generally used to mark potholes or hazards in the road rather than to draw attention to malfunctioning traffic signals.

Although the jury could reasonably have decided that the sole proximate cause of the accident was the plaintiffs' failure to be more observant in proceeding through the intersection, we conclude that reasonable minds could determine also that defendant's actions were a proximate cause of this accident. Thus, this matter was properly within the province of the jury to decide, and we find no error in the trial court's refusal to direct a verdict for the defendant.

We cannot agree with the assertion in Chief Justice Billings' dissent that the State owed no duty to the plaintiffs in this case.[1] The dissent maintains that an intersection with a traffic light that is emitting no signals is indistinguishable from an unregulated in-

---

[1] We address this issue despite our observation that neither party has argued that the State had *no* duty of care. Rather, the issue raised on appeal concerns the degree of care which the State owed to the plaintiffs.

tersection and that the State therefore had no legal duty to regulate the flow of traffic through this intersection.

The only authority cited for this proposition is a New Jersey case, *Hoy* v. *Capelli*, 48 N.J. 81, 222 A.2d 649 (1966), where a traffic signal had been completely removed nearly two months prior to the accident under litigation. In that case, the court's decision "provided immunity for the discretionary municipal action of determining whether or not to place ordinary traffic control devices at a particular intersection." *Shuttleworth* v. *Conti Construction Co.*, 193 N.J. Super. 469, 472, 475 A.2d 48, 50 (1984).

■ We agree that the State may have had no legal duty to suspend a traffic control light above the intersection of Berlin Street and State Aid Highway 62 in order to regulate the flow of vehicular traffic. Once the State, however, in the exercise of its discretion, decided that there was a need to control traffic at the intersection by means of a traffic light, it had a duty to erect and maintain this mechanical device in a manner that would reasonably provide for the protection of the public.[2] See *Smith* v. *City of Preston*, 97 Idaho 295, 298, 543 P.2d 848, 851 (1975); *Baran* v. *City of Chicago Heights*, 43 Ill. 2d 177, 180, 251 N.E.2d 227, 229 (1969); *Firkus* v. *Rombalski*, 25 Wis. 2d 352, 358, 130 N.W.2d 835, 838 (1964).

■ When the signal malfunctioned and the State put up its emergency traffic control devices, it had a duty to do so in a careful and prudent manner, so as not to create an unreasonable risk of harm to motorists approaching and passing through this intersection. It was "within the province of the jury to determine [whether the] precautions [taken were] commensurate with the defendant's duty of exercising due care under the circumstances." *Forcier* v. *Grand Union Stores, Inc.*, 128 Vt. 389, 395, 264 A.2d 796, 800 (1970) (foreseeable consequences significant in determining scope of legal duty).

---

[2] " '[O]ne who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith.' " *City of Prichard* v. *Kelley*, 386 So. 2d 403, 406 (Ala. 1980) (recognizing duty on part of city to maintain traffic control sign in a reasonably safe condition) (quoting *Dailey* v. *City of Birmingham*, 378 So. 2d 728, 729 (Ala. 1979)). See also *Smyth* v. *Twin State Improvement Corp.*, 116 Vt. 569, 570-71, 80 A.2d 664, 665 (1951) ("the law imposes an obligation upon everyone who attempts to do anything for another, even gratuitously, to exercise some degree of care and skill in the performance of what he has undertaken, for non-performance of which duty an action lies.").

## II.

Defendant's second claim of error is that the trial court's instructions to the jury regarding the duties of plaintiff-driver Sunee Roberts were incomplete and prejudicial to the defendant. We agree.

Defendant requested the following instruction:

> A motorist is chargeable with the knowledge of other vehicles approaching an intersection which are in plain view and can be expected to see what was within the range of her vision and it will not avail the plaintiff in this case to say that she looked and did not see the St. Pierre car approaching when she could not have helped but see it if she had looked.

The trial court refused to charge the jury as requested; instead, it gave the following instruction, in pertinent part:

> Mrs. Roberts had a duty to use reasonable care for her own safety when approaching the intersection. If there was an obvious danger or if she knew or reasonably should have known that a dangerous situation existed, she had a duty to use ordinary care to avoid it. . . . All motorists are charged with a duty to be alert and keep an appropriate lookout for hazards and other traffic.

■ A motorist has a duty to look for "approaching vehicles and to look effectively, that is, with the degree of care that a careful and prudent man would have exercised in like circumstances." *Hastings* v. *Soule*, 118 Vt. 105, 109, 100 A.2d 577, 579 (1953) (citing *Rich* v. *Hall*, 107 Vt. 455, 462, 181 A. 113, 116 (1935); *Beattie* v. *Parkhurst*, 105 Vt. 91, 94, 163 A. 589, 590 (1933)). More specifically, a driver is presumed to see what is "within the range of his vision, and it will not avail him to say that he looked and did not see what he could not help seeing if he had looked." *Scrizzi* v. *Baraw*, 127 Vt. 315, 319, 248 A.2d 725, 728 (1968) (citing *Smith* v. *Grove*, 119 Vt. 106, 111, 119 A.2d 880, 883 (1956); *Hastings, supra*, 118 Vt. at 109, 100 A.2d at 579). Thus, defendant's requested instruction is, for the most part, amply supported by our case law.[3]

---

[3] We do not intimate that defendant's instruction should have been given exactly as requested. In particular, defendant's use of the word "when" in the last line

Plaintiffs claim, however, that defendant was not factually entitled to its requested instruction. To support this contention, plaintiffs point to the fact that there were no night photographs admitted into evidence to establish what a motorist could have seen at night. We do not find this argument persuasive.

Although it was dark, examination of the daytime photographs admitted into evidence reveals that plaintiff had an unobstructed line of sight along the intersecting highway to her left,. or easterly, for a considerable distance. Further, testimony at trial established that Mrs. Roberts had looked to her left but did not see the St. Pierre vehicle and that the approaching car's lights were on. This Court has held "that the trial court must fully and correctly charge upon each point indicated by the evidence that is material to a decision of the case." *State* v. *Dapo*, 143 Vt. 610, 614, 470 A.2d 1173, 1175 (1983). In this case, defendant requested an instruction on a point of law that was both material to the decision and significant to its case. There was sufficient evidence on which to base a determination regarding night visibility, and we conclude that the instruction as given did not adequately cover the issue. A motorist is not only obligated to maintain a proper lookout, but is also presumed to have knowledge of what is in plain view.

Inasmuch as this error requires reversal, we need not address defendant's other claims on appeal.

*Reversed and remanded.*

**Billings. C.J.**, concurring and dissenting. Although I concur with the majority that the trial court's instructions to the jury were insufficient and erroneous, I must respectfully dissent from the majority's affirmance of the denial of a directed verdict for the defendant. I would enter judgment for the defendant.

To prevail in any negligence action, a plaintiff must prove that the party from which recovery is sought owed the plaintiff a duty of care, that the duty of care was breached, and that the breach proximately caused the plaintiff's injuries. See *Morris* v. *American Motors Corp.*, 142 Vt. 566, 572, 459 A.2d 968, 971 (1982).

Despite the majority's disclaimer, one of the defendant's main issues on appeal is the issue of the duty of care. The plaintiffs

of its instruction is inappropriate; whether Sunee Roberts could not have helped seeing the other vehicle is a question to be resolved by the jury.

here have failed to prove that the State owed them a duty of care. There is no duty on the part of the State to regulate traffic on its highways. See, e.g., *Department of Transportation* v. *Neilson*, 419 So. 2d 1071, 1073 (Fla. 1982). An intersection with a traffic light which is emitting no signals is indistinguishable from an unregulated intersection. See *Hoy* v. *Capelli*, 48 N.J. 81, 87, 222 A.2d 649, 652 (1966) (intersection where signal removed because of malfunction indistinguishable from intersection never having signal). Thus, the State owed the plaintiffs here no duty to regulate the flow of traffic through the intersection where the accident here took place.

Cases from other jurisdictions where a duty of care is imposed by statute to keep highways free from dangerous conditions have necessarily been distinguished. See, e.g., *Feingold* v. *County of Los Angeles*, 254 Cal. App. 2d 622, 62 Cal. Rptr. 396 (1967); *Lytle* v. *City of Newark*, 166 N.J. Super. 191, 399 A.2d 333 (1979). The facts before us require treating this intersection as an unregulated one, and, therefore, are distinguished from the facts of other cases where a defective signal misregulates traffic. See, e.g., *City of Indianapolis* v. *Parker*, 427 N.E.2d 456, 460 (Ind. App. 1981) (traffic light signaling green in all directions); *Baca* v. *Board of County Commissioners*, 76 N.M. 88, 90, 412 P.2d 389, 390 (1966) (traffic signal signaling in only one direction).

In that there is no duty of care owed by the State to the plaintiffs under the circumstances of this case, the majority, by creating such a duty, is judicially legislating, which is improper, especially in view of the fact that no such duty is found in the common law.

I am authorized to state that Justice Peck joins in this dissent.

**Peck, J.,** concurring in part and dissenting in part. I concur with both the majority and Chief Justice Billings that the trial court's instructions to the jury were insufficient and erroneous. Further, I agree with, and join in the dissenting opinion of the Chief Justice to the extent of his conclusion that, at least under the facts of this case, the plaintiffs failed to prove the existence of any duty on the part of the defendant State to maintain the traffic light for their benefit. I share his view that, on this basis, the court erred in refusing to grant defendant's motion for a directed verdict.

Regardless of the above, I believe that the basis for the reversal and the reasons stated by the Chief Justice for his dissent, while they are valid as far as they go, are too narrow and limited. In my judgment, there were additional and equally strong grounds upon which the motion for a directed verdict should have been granted; likewise, there were significant errors in the court's charge to the jury beyond the one discussed by the majority. For these reasons I feel compelled to write independently to insure that the full scope of my concern may be understood.

## I. Proximate Cause

In reversing the judgment below and remanding for a new trial, the majority acknowledges and approves the earlier holdings of this Court relating to the duty of a motorist to look effectively. The opinion concludes: "A motorist is not only obligated to maintain a proper lookout, but is also *presumed* to have knowledge of what is in plain view." (Emphasis added).

In support of this conclusion, the majority quite properly cites our leading cases on these points: *Hastings* v. *Soule*, 118 Vt. 105, 109, 100 A.2d 577, 579 (1953); *Rich* v. *Hall*, 107 Vt. 455, 462, 181 A. 113, 116 (1935); *Beattie* v. *Parkhurst*, 105 Vt. 91, 94, 163 A. 589, 590 (1933). Notably appropriate as applicable here is the quotation adopted by the majority from a 1968 case: a driver is *presumed* to see what is "within the range of his vision, and it will not avail him to say that he looked and did not see what he could not help seeing if he had looked." *Scrizzi* v. *Baraw*, 127 Vt. 315, 319, 248 A.2d 725, 728 (1968) (citing *Smith* v. *Grove*, 119 Vt. 106, 111, 119 A.2d 880, 883 (1956); *Hastings, supra*, 118 Vt. at 109, 100 A.2d at 579)).

For purposes of this dissent it will be assumed, but arguendo only, that defendant did owe a duty to plaintiffs, and further that defendant was negligent in the performance of that duty. Nevertheless, before liability for a negligent act attaches, a plaintiff must prove that the act was a proximate cause of his injuries. Plaintiffs here failed completely to establish that any act of defendant, negligent or otherwise, contributed to the accident and the resulting injuries. The majority has made it so, by the simple expedient of saying it was so, or at least by saying there was sufficient evidence to go to the jury on the question. However, in my

view, defendant's acts, even if negligent, were not a proximate cause of the accident.

A preliminary observation: even if the further assumption is made that defendant's acts (assuming they were negligent) did constitute a proximate cause, it is inconceivable, on the basis of comparative negligence applied to the undisputed facts, that defendant was 75% negligent and Mrs. Roberts only 25% negligent. Such a finding here suggests strongly that the jury may have succumbed to sympathy, or "deep pocket," or both.

The majority points out correctly that "proximate cause calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences." *Rivers* v. *State*, 133 Vt. 11, 14, 328 A.2d 398, 400 (1974). Put another way, it is not enough for a plaintiff to prove negligence on the part of the defendant. The former carries the additional burden of showing some nexus, some connection, between a negligent act of the defendant and a subsequent injury to the plaintiff. This relationship between an alleged cause and subsequent effect must be much more than the remote connection relied upon here by the majority.

Summarizing, a finding of negligence alone will not support a verdict in favor of a plaintiff; there must be a causal connection between a defendant's negligence and the injury to a plaintiff. *Brown* v. *Kelly*, 140 Vt. 336, 338, 437 A.2d 1103, 1104 (1981); *Rivers* v. *State*, *supra*, 133 Vt. at 13, 328 A.2d at 399 (both citing *Paquin* v. *St. Johnsbury Trucking Co.*, 116 Vt. 466, 470, 78 A.2d 683, 685 (1951)); *Cameron* v. *Bissonette*, 103 Vt. 93, 95, 152 A. 87, 88 (1930); *Humphrey* v. *Twin State Gas & Electric Co.*, 100 Vt. 414, 422, 139 A. 440, 444 (1927).

A further qualification is desirable on the question of proximate cause. The word "proximate" is employed advisedly by the courts to distinguish between such a cause and one which is so remote that it is not recognized by the law for purposes of imposing liability, even though it may be a cause-in-fact of the injuries. "[T]he law regards the proximate rather than the remote cause of an injury . . . ." *Woodcock's Admr.* v. *Hallock*, 98 Vt. 284, 290, 127 A. 380, 382 (1925). A defendant is liable for all of the injuries flowing from a negligent act "until diverted by the intervention of some efficient cause that makes the injury its own, or until the

force set in motion by the negligent act has so far spent itself as to be too small for the law's notice." *Id.*

Without the distinction between proximate and remote causes, the scope of liability for negligence may be extended almost indefinitely as to both time and circumstance by ever-expanding causal links. To illustrate the point through a *reductio ad absurdum,* the mere fact that a defendant exists is a cause in fact. Thus it may be seen that negligence *alone* does not necessarily equate with proximate cause. Negligence speaks merely to the *nature* of a defendant's act or omission; it does not, per se, make the act or omission a proximate cause.

The majority acknowledges these rules and concepts surrounding proximate cause. Having done so, however, the opinion struggles to apply them to this case by claiming that there was at least sufficient evidence on the issue of proximate cause, that it was proper to submit the question to the jury. The opinion seems to suggest that the evidence called for an evaluation in which reasonable minds could differ. Viewing the undisputed evidence, even in the light most favorable to the plaintiff, this represents a triumph of legal rhetoric over everyday common sense. It is unnecessary to recite that evidence again; it is adequately reviewed in the majority opinion. Nevertheless, we should bear in mind that virtually every key element is contained in the testimony of Mrs. Roberts herself, as supplemented by the photographs and plans received into evidence as exhibits. This evidence shows, beyond any fair or reasonable question, that even if the defendant was negligent, that negligence could not possibly have been a proximate cause of the accident which occurred. In this case, the malfunctioning light was simply a condition; it was not a cause.

It would be difficult to improve on the language of a New Jersey court based on a virtually identical fact pattern:

> Granting plaintiff the benefit of all favorable testimony and all inferences for purposes of this motion,* the evidence reveals that the traffic signals were not operating at the time of the accident. As such, the intersection was like numerous other unregulated intersections, and both plaintiff and the other driver were required to use due care in negotiating through it. . . .

---

* For a judgment of dismissal at the conclusion of the plaintiff's case. The motion was granted.

The fact that the accident happened at all bespeaks of a lack of due care in the use of the intersection by one or both drivers. . . .

Plaintiff's case also fails to meet the required burden of proof with regard to the issue of proximate cause . . . . It is difficult to see how the absence of a traffic control signal in any way contributed to the accident.

. . . [T]he driver knew the traffic light was not working and knew she was approaching what she should have considered to be an uncontrolled intersection and acted accordingly. The fact of the collision bespeaks the negligence of one or both drivers. . . . Common sense leads to the conclusion that any negligence causing the accident involved here was that of the plaintiff or the other driver or both and not of the City.

*Lytle* v. *City of Newark*, 166 N.J. Super. 191, 194-96, 399 A.2d 333, 335-36 (1979). The facts in the case before us constitute an almost eerie recapitulation of the facts in *Lytle*. Nevertheless, a proper application of the law established in *Scrizzi* v. *Baraw, supra, Smith* v. *Grove, supra, Hastings* v. *Soule, supra*, and other cases, leads inescapably to the same result. Mrs. Roberts knew the light was not functioning. It must be *presumed* that she saw the lights of the vehicle approaching the intersection from her left; her sight line in that direction was clear for a considerable distance; she was thoroughly familiar with the intersection and knew she was about to enter it, yet she did not slow down or stop before doing so; she simply went headlong into the intersection heedless of the vehicle approaching from her left. Reprising the New Jersey court, "It is difficult to see how the absence of a traffic control signal in any way contributed to the accident." *Lytle, supra*, 166 N.J. Super. at 195, 399 A.2d at 336. At best it was too remote for the law to take cognizance of that fact as a proximate cause. Courts must be wary of allowing legal tags to dictate a result contrary to the common sense of a particular case.

It seems to me inconsistent and contradictory for the majority to recognize and approve the holding of this Court that "it will not avail [a party] to say that he looked and did not see what he could not help seeing if he had looked," *Scrizzi* v. *Baraw, supra*, 127 Vt. at 319, 248 A.2d at 728, and then, on the uncontradicted evidence of a clear sight line and of the fact that the lights of the

approaching vehicle were on, to say, in effect, that it was a question for the jury to determine as to whether Mrs. Roberts could see those lights. It is simply judicial myopia to ignore what every person blessed with eyesight knows very well: in the absence of some obstruction, and there was none here, the lights of a motor vehicle are visible at night. Contrary to *Scrizzi*, it has apparently availed the plaintiffs a great deal for Mrs. Roberts to say she looked but did not see what she could not have helped seeing if she had looked, or looked "effectively." *Hastings, supra*, 118 Vt. at 109, 100 A.2d at 579. Moreover:

> [I]t is true, also, . . . that a court cannot ignore the physical facts that are before it, and, though a witness testifies that a thing is so, his testimony will not be given credence when indisputable evidence to the contrary is before the court.

*Smith* v. *Grove, supra*, 119 Vt. at 111, 119 A.2d at 883 (citing *Ellison* v. *Colby*, 110 Vt. 431, 436, 8 A.2d 637, 640 (1939)). Once again, the majority elects to ignore established case law, which should have required a directed verdict.

Finally, whatever justification there may have been for the other vehicle to enter the intersection without stopping, cannot, or should not, be transferred vicariously to Mrs. Roberts. The latter's negligence was her own, regardless of the negligence or lack thereof of the other driver.

A case more appropriate for a directed verdict is difficult to imagine; the motion should have been granted.

## II.   Jury Instruction

Since this case may be retried, I think the majority can be faulted for limiting its criticism of the jury instruction to the trial court's failure to charge on the issue of Mrs. Roberts' duty not only to look but to look effectively. Certainly I agree with this holding as far as it goes, but there was at least one other error in the charge that could lead to further difficulties if repeated on retrial. At one point the court instructed the jury that the State "has a duty to use a *high degree of care* in maintaining a controlled intersection." (Emphasis added). In the absence of a statute, this is not the law; there is no such statute. The State's obligation in maintaining its highways is simply to keep them in a reasonably safe condition with reference to such accidents as may

be expected to occur thereon, *Zeno's Bakery, Inc.* v. *State*, 105 Vt. 370, 379, 166 A. 379, 382 (1933), and to "preserve a condition of reasonable safety in their roads with reference to the amount and kind of travel they accommodate." *Morse* v. *Town of Richmond*, 41 Vt. 435, 440 (1868). The reasonably prudent person test is applicable. 39 Am. Jur. 2d *Highways, Streets & Bridges* § 372, at 762-63.

It is true that the court made some subsequent references to "the way a reasonable and careful person would act . . . in the same situation." Nevertheless, such language is in clear conflict legally with the "high degree of care" charged earlier, and might easily have confused and misled the jury.

I believe strongly that defendant was entitled to a directed verdict. Beyond the fact that there was no duty shown running from defendant to the plaintiffs, proximate cause was not demonstrated by any fair preponderance of the evidence. I would therefore enter judgment here for defendant. If the matter is to be tried a second time, however, great caution should be exercised by the trial court to guard against the element of sympathy playing any part in the result. The case seems to me particularly susceptible to such a possibility. This can be accomplished in some measure at least by proper instructions to the jury which cover all the significant points of applicable law.