**Ralph LASH and Betty A. Lash,**
**Plaintiffs-Appellees,**

v.

**J. J. NEWBERRY COMPANY,**
**Defendant-Appellant.**

**No. 77, Docket 73–2117.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 14, 1974.

Decided Jan. 10, 1975.

R. Joseph O'Rourke, Rutland, Vt. (Ryan, Smith & Carbine, Rutland, Vt., on the brief), for defendant-appellant.

David L. Cleary, Barre, Vt. (Richard E. Davis Associates, Inc., Barre, Vt., on the brief), for plaintiffs-appellees.

Before MEDINA, FRIENDLY and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Appellant J.J. Newberry Co. appeals from a jury verdict awarding damages to appellees Betty and Ralph Lash for injuries sustained when Mrs. Lash slipped and fell on ice on the public sidewalk abutting appellant's property in Barre, Vermont. Since appellees are citizens of Vermont and appellant is a citizen of Delaware, the case was properly within the diversity jurisdiction of the District Court under 28 U.S.C. § 1332. Vermont law governs the questions on appeal.

Appellant maintains a store on one of the main streets of Barre. A broad sidewalk slopes gently down from appellant's store; it is owned by appellant to a point halfway between the store and the curb, and by the City between that point and the curb. Several years ago, the sidewalk was repaved by the City, with costs shared equally between the City and appellant.

The public portion of the sidewalk has been maintained by the City alone, but both owners have cooperated in the past to keep the entire sidewalk unobstructed in bad weather. Thus, by custom, when it snowed, the City would plow both portions of the sidewalk and sometimes salt it. Appellant would shovel the entire sidewalk, piling snow into a low "dike" near the curb, and salt it when the City failed to do so. Sometimes, salt applied by either the City or appellant would melt the snow on the sidewalk, so that water would run down from the portion of the sidewalk owned by appellant onto that portion owned by the City. The evidence showed that appellant was aware that depressions existed in the public portion of the sidewalk in which water would occasionally collect and freeze.

Two days before Mrs. Lash's fall, it had rained and then become very cold. Snow began to fall on the evening preceding the accident and continued into the early morning hours. Later that morning, the City plowed the sidewalk. Still later, around 8:00 A.M., appellant's store manager arrived at work and shoveled off the excess snow left behind by the snowplow. No salt was applied. Sometime thereafter, there may have been a rather light snow fall, but there was a conflict of testimony on this.

In the early afternoon, appellee Mrs. Lash crossed the street in the middle of the block, arriving at a point nearly opposite the entrance to appellant's store. Piled on the curb was a "dike" of snow about eight inches high and eight wide. Stepping over this low impediment, appellee placed her foot on what appeared to be snow but was in fact a patch of ice covered by a thin layer of snow. She slipped, fell and sustained the injuries complained of in this case. Her fall occurred on the municipal portion of the sidewalk.

At trial, the district judge charged the jury that they could find appellant liable if they determined that appellant had breached its duty of care owed as "a reasonably prudent man" to Mrs. Lash and that the breach of care proximately caused her injury. He then charged more specifically that in determining whether appellant had exercised reasonable care, the jury could consider appellant's conduct under two alternative theories of negligence: 1) breach of an abutter's duty to keep his property from becoming a source of danger to users of the public way, or 2) violation of a local ordinance forbidding private property owners from depositing snow or ice on public sidewalks, which violation would be prima facie evidence of negligence. After the charge on negligence was limited to these two theories, there was no further charge that the jury could find the defendant liable if its agent had piled snow over an ice pocket already formed in a manner that the jury could find to have been negligent. This alternative theory was simply never put to the jury, and we must assume that their verdict rested on either of the two theories on which they were instructed. We hold that the judge's charge contained reversible error and we remand for a new trial.

In charging the jury on the first theory of liability, the court stated that one whose land abuts on a public way owes a duty to users of that way to keep his property from becoming a source of danger to them. Specifically, an abutter must "keep it from becoming a source of danger through any defect, either in the construction, use, or maintenance of his rented property, so far as the exercise of the care of a prudent person can guard against such danger." The court charged that an abutter must guard against the possibility that water running off his property could cause danger to the public. An abutter is bound to acknowledge the severity of Vermont winters and thus to realize that water running off his property might pool in sidewalk depressions, freeze, and thereby endanger the safety of passers-by.

Counsel for appellant objected to this charge, on the ground that there was no evidence to indicate that the ice upon which Mrs. Lash had fallen resulted from a discharge of water from appellant's property. In his objection, counsel specifically called to the attention of the court that there was no evidence that the piece of ice on which the appellee claimed to have fallen was the result of "improper discharge" of water from the appellant's property. The court then recharged the jury, acknowledging the lack of evidence as to discharge of water, but allowing the jury "to determine whether the evidence permits the inference that the snow melted or ran off from the slope from the entranceway to the Newbury [sic] Company and collected in puddles of the water [sic]." He concluded this additional charge by saying, "It is for you to say if there is water which collected in pools and if so, where it came from." By posing the question, the court was telling the jury that if they found the "pools" were formed by water that "came from" the appellant's sidewalk, they could find liability.

Still later, in response to a question from the jury, the court once again described to them the nature of the abutter's duty: "He must exercise due care to prevent snow either in an actual state of snow or as melted snow, from running off store property and collecting on the public way, in such a manner as to cause danger to public users of the sidewalk." Once again, appellant's counsel objected to the charge.

The court's theory of negligence as expressed in his charge was apparently based on the leading Vermont case, Murray v. Nelson, 97 Vt. 101, 122 A. 519 (1923). In *Murray*, defendant maintained a water pipe which, being improperly insulated, burst and discharged water onto a public sidewalk. Plaintiff slipped on the resulting ice patch and was allowed to recover from defendant. The *Murray* court used the broad language used by the district court below, stating that an abutter must maintain

his property so that it does not become a source of danger to users of the public way. But it added "[i]f he artificially collects upon his own premises a substance which, from its nature, is liable to escape and do damage to others, he must use due care to restrain it, and is liable for damages resulting from his failure to do so." 122 A. at 520–521.

Appellant contends that the crucial word in that passage is "artificially" and that the district court erred in failing to distinguish a case in which the dangerous condition is created by "artificial" use of the land, causing discharge onto a public way, from a case in which the flow of water is the result of a natural configuration of the property. Although we have been able to find no Vermont case denying an abutter's liability on the ground that danger on adjoining public land was created by a "natural" condition on the abutter's land, we believe that a Vermont court, reasoning from the language in *Murray* quoted above, would distinguish between "artificial" and "natural" conditions and hold an abutter responsible only for the former.

█ We base this holding in part on the law of other jurisdictions. The predominant rule is that an abutter is found liable only if he maintains an artificial structure, such as a drainpipe, that channels water onto public land in an uneven fashion so that it is more likely to pool and to freeze. That is, the effect of his action must be to alter natural runoff so as to create a new sort of danger. Annot., 18 A.L.R.3d 428, 432–36, 441–45,

463–69 (1968). Man-made structures such as an embankment or driveway are considered to be natural conditions so long as they allow a more or less even runoff and do not create an unusually large channel for water discharge. Id. at 463–64, 466–67.

█ The judge's failure to instruct the jury on the difference between a natural and an artificial condition maintained on an abutter's land cannot be termed harmless error. Testimonial and photographic evidence suggests that the slight slope of the sidewalk in front of appellant's store does not constitute a channel through which an unusual amount of water from rain or melted snow might run down onto the public portion of the sidewalk. The jury might well have found that the private portion of the sidewalk, although man-made, is a natural feature of appellant's property. In that case, appellant would have no duty *as an abutter* on a public way to see that water running off this part of his land did not collect and freeze in depressions on the City's half of the sidewalk.

The difficulty is that the jury was allowed to find that if water ran down from the abutter's land due to perfectly natural cause to form ice, and the plaintiff slipped, the defendant is liable. We see no escape from the conclusion that this is precisely what the jury could have found upon the instructions given. If this be so, we have no choice but to send the case back for a new trial under proper instructions.[1]

1. Appellees have raised two arguments in support of the verdict for the first time on this appeal. First, they now contend that even a natural flow of water may give rise to liability if it is interrupted by a "retaining wall along the sidewalk" that plays a part in the formation of the icy conditions and that the snow dike at the curb created in part by appellant's shoveling efforts is akin to such a "retaining wall." We are not sure either of the validity of the legal argument or of what role such a snow dike would play in the accumulation of ice in admitted depressions in the public half of the sidewalk in this case. In any event such a novel theory should have been brought to the attention of the judge and, if he thought proper, the jury, rather than advanced on appeal as an alternative theory to support a finding of liability.

Second, appellees now argue that an abutter who undertakes to clean off a public portion of sidewalk may be held liable for improper work that creates a hazard to passersby. See 39 Am.Jr.2d Highways § 517 at 919 (1968). Whether or not this proposition would be true as a matter of law in Vermont, the jury was not specifically instructed to consider whether liability here could be premised on such a theory, having before it instead another specific theory which we find erroneous. We cannot therefore uphold their verdict on the basis now asserted by appellees.

The second theory on which the court charged was based on the existence of a Barre city ordinance, which forbids a private landowner from shoveling or depositing snow or ice from his property onto public sidewalks.[2] The ordinance does not provide explicitly that civil liability may be premised on its violation. Nevertheless, appellees contended below that under applicable principles of Vermont law they could establish appellant's negligence by showing that appellant had violated the ordinance. Specifically, appellees attempted to prove that appellant's store manager had, in fact, shoveled snow from appellant's portion of the sidewalk onto the patch of ice on the City's portion, in violation of the ordinance, thus creating the danger that resulted in Mrs. Lash's fall.

Appellant argues that prima facie negligence results from violation of an ordinance only if it is what is called a "safety ordinance," and that this ordinance is not of that kind, but rather was enacted to save the City the added expense of clearing snow which originally fell on private grounds but was subsequently shoveled on to public sidewalks or streets. We think the ordinance was for the benefit of the public as well as for the purpose of saving money for the City. We accordingly reject appellant's argument.

It is true that most of the Vermont cases in which civil plaintiffs have been allowed to prove negligence by showing a defendant's violation of a statute or ordinance have involved traffic regulations. Larmay v. Van Etten, 129 Vt. 368, 278 A.2d 736 (1971); Smith v. Grove, 119 Vt. 106, 119 A.2d 880 (1956);

Shea v. Pilette, 108 Vt. 446, 189 A. 154 (1937). And some language in those opinions may be read to imply that civil liability may be premised only on the violation of "safety" rules such as those involved in such cases. See Larmay v. Van Etten, *supra*, 278 A.2d at 738–739; Smith v. Grove, *supra*, 119 A.2d at 883, 884. However, no attempt has been made to define the meaning of "safety" in contexts other than traffic ordinances.

On the other hand, in Stark v. First National Stores, 117 Vt. 231, 88 A.2d 831 (1952), plaintiff asserted the right to prove defendant negligent based on his violation of an ordinance very similar to that involved in this case. The ordinance required a property owner whose land abutted a public sidewalk to maintain a guard on his roof to prevent ice and snow from falling on the sidewalk. As in this case, the ordinance did not explicitly provide that its violation would result in civil liability to those injured thereby. Without mentioning the term "safety," the court held that plaintiff had stated a valid cause of action. We hold that whether the Vermont court intended in *Stark* to expand the concept of "safety" or to create a new category of enactment on which civil liability might be premised, the holding is controlling in this case. The trial judge was correct in instructing the jury that violation of the ordinance may properly be used to establish a prima facie case of negligence.

The effect of such violation is not as radical, however, as the Judge's charge stated it to be. He said:

"If you find that the defendant did violate [the ordinance], it becomes pri-

**2.** Barre, Vt., City Ordinances, Ch. XIV:

"Sec. 1. No person, partnership or corporation shall throw, shovel, propel, deposit or cause to be thrown, shoveled, propelled or deposited, snow or ice from private property into the streets or public sidewalk.

"Sec. 2. If snow or ice is thrown, shoveled, propelled or deposited on the street or public sidewalk from private property, the Superintendent of Streets shall remove such snow and ice at the expense and charge of the abutting property owner or tenant, which expense and charge may be recovered with full costs, in an action of contract in the name and behalf of the city, and the person, partnership, or corporation causing such snow or ice to be thrown, shoveled, propelled or deposited from private property onto the street or public sidewalk, shall be fined not less than five dollars nor more than fifty dollars.

"Sec. 3. The Chief of Police shall promptly notify the Superintendent of Streets of any violation of the provisions of this chapter."

ma facie evidence of negligence and if you so find, then the burden shifts to the defendant, that is, the burden of proof shifts to the defendant, to persuade you, by a preponderance of the evidence, that the violation of the ordinance was not an important factor, was not a proximate cause of the fall which the plaintiff, Betty Lash, sustained."

The court's statement was inadvertently deficient in two respects, probably because of the failure of the parties to submit written requests to charge. First, it neglected to point out that under Vermont law, a defendant has the right to introduce evidence to rebut the presumption of negligence established by proof that he has violated an enactment. Second, it misstated Vermont law by saying that after the plaintiff has shown a violation, the burden of proof on the issue of proximate cause shifts to the defendant. We believe that on these two issues, the court misapplied the law of Vermont.

■ Under the Vermont cases, the effect of proof of violation of an ordinance is limited. Such proof establishes defendant's negligence only prima facie, shifting the burden of going forward on the issue of negligence to the defendant. Larmay v. Van Etten, *supra*, 278 A.2d at 738–739; Smith v. Grove, *supra*, 119 A.2d at 883–884; Stark v. First National Stores, *supra*, 88 A.2d at 833; Shea v. Pilette, *supra*, 189 A. at 155–156; Landry v. Hubert, 101 Vt. 111, 113, 141 A. 593, 594 (1928). The defendant may thus introduce evidence to prove either that he did not in fact violate the ordinance or that his violation was not in fact negligent under the circumstances of the case (as here, where, according to appellant, the nature of the weather conditions prior to the accident raised issues of "excuse"). The burden of proving proximate cause remains with the plaintiff.

Appellee contends, however, that appellant neglected to object to the district judge's charge on the effect of the ordinance and thereby failed to preserve its point for appeal.

Neither party, as we have seen, submitted written requests to charge. In a discussion with counsel before making his charge, the judge informed them that he would charge the jury on the ordinance. He told counsel that he would instruct the jury that if they found that defendant had violated the ordinance, plaintiff would have established a prima facie case of negligence, thus shifting to the defendant the task of rebutting the presumption. And he would also charge that defendant's evidence might show "that [violation] had nothing to do with the injury which the plaintiff sustained."

Appellant's counsel objected that this ordinance was not a safety ordinance, but did not object to the proposed content of the charge, which stated correctly that the presumption of negligence was rebuttable.[3]

■ Though the judge gave counsel a preview of a proper charge in chambers, he inadvertently gave the improper charge in his actual instructions to the jury. In such circumstances it may be going too far to require counsel to except to a clearly erroneous charge when he had every reason to think a correct one would be given. Still an appellate court should exercise its discretionary power to review errors not saved by proper objection sparingly and only in exceptional instances. See, *e. g.*, Dowell, Inc. v. Jowers, 166 F.2d 214, 221 (5 Cir.), cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759 (1948). While we have some doubt that the error in the charge on the ordinance, standing by itself, is of such exceptional character, nothing is lost by our considering it now since the case must be remanded in any event for a retrial because of the erroneous charge on an abutter's liability. *See* Troup v.

---

**3.** Nor did he object to the somewhat vague indication that the judge intended to charge that a finding of violation of the statute would shift the burden of proof on proximate cause.

Chicago, D. & G. B. Transit Co., 234 F.2d 253, 260 (2 Cir. 1956).

In light of the foregoing, we are constrained to reverse the judgment of the District Court and to remand for a new trial.